In Equity.

MARTIN FLYNN

*vs.*

THE AMERICAN BANKING AND TRUST COMPANY et als.

Androscoggin.     Opinion April 21, 1908.

*Banks and Banking. Stockholders. Liability. Persons Entitled to Enforce. Time
to Sue. Liability for Interest. Insolvency and Receivers. Guaranty of Pay-
ment. Demand. Acceptance of Dividends. Pledges of Stock. Private
& Special Laws, 1887, chapter 281; 1889, chapter 349, section 6.
Statute 1871, chapter 86, section 3. R. S., 1871, chapter 47, section
71; 1883, chapter 47, section 84; 1903, chapter 47, section 84.*

By the charter of a Maine corporation the shareholders were made " individu-
ally liable equally and ratably, and not one for another, for all contracts,
debts and engagements of the corporation to the extent of the amount of
their stock therein at the par value thereof in addition to the amount
invested in such shares." *Held:*

1. The liability imposed by the statute upon the shareholders was not an
asset of the corporation and could not be enforced by the corporation nor
by its receiver but only by the creditors of the corporation in their own
behalf.

2. The shareholders were not subject to suit by the creditors of the corpora-
tion to enforce such statutory liability until in proceedings against the cor-
poration its assets were fully administered and the fact and amount of
deficiency of assets judicially ascertained. Such suit begun within six years
after such judicial ascertainment is not barred by the six years statute of
limitations.

3. When in proceedings against the corporation the final account of the receiver, showing a full administration of the assets and no balance in his hands, is by decree approved and allowed and the report of the commissioners on claims against the corporation previously accepted and allowed shows the amount of the liabilities of the corporation, the fact and amount of the deficiency of assets, if any, have been judicially ascertained. A suit to enforce the statutory liability of the shareholders begun immediately thereafter is not begun prematurely. There is no need of a further decree to declare an obvious mathematical truth.

4. If the assets of the corporation when fully administered only suffice for the payment of the principal of the debts of the corporation, the statutory liability of the shareholders may be resorted to for the recovery of such interest as would have been recoverable from the corporation had it continued solvent, without receivership.

5. When in proceedings against a defaulting corporation for the sequestration and administration of its assets, a loss of assets results from the misconduct of the receiver, the loss must be borne by the shareholders and the amount of their liability is thereby increased pro tanto.

6. If the corporation has guaranteed the payment of the notes of others "when due and payable without notice of any neglect on the part of the payors thereof," the corporation becomes liable and interest begins to run upon such notes against the corporation from the default of the payors, without demand upon, or notice to, the corporation.

7. When the directors of the corporation vote to stop payment of its liabilities, or its assets are sequestered by a decree of the court, no demand upon the corporation is necessary to entitle a creditor to interest for delay in payment.

8. A suit by creditors against shareholders to recover out of their statutory liability the interest due from the corporation is not a separate suit for interest, nor does the acceptance of dividends from the assets of a defaulting corporation to the amount of the principal of their claims, bar the creditors from recovering the interest on them from the shareholders.

9. Where the holders of guaranteed notes reassign them to the corporation or its receiver and prove their claims therefor against the corporation, and the receiver collects the notes, but instead of paying the proceeds to the former holders turns them into the general fund for creditors with the approval of the court, such holders are entitled to be regarded as general creditors with the same right to resort to the statutory liability of shareholders, though had such proceeds been paid to them they would have been paid in full.

10. Persons appearing by the stock books and stock certificates to be the absolute owner of their shares in such a corporation are subject to the statutory liability of shareholders, though they only hold them as security for debts due to them from the real owners,

11.  The mere fact that upon the stock books and the stock certificates the word " trustee " appears after the name of the holder does not exempt him from the statutory liability of a shareholder.

12.  Purchasers of shares in such a corporation take the risk of the financial condition of the corporation at the time of their purchase whether good or bad.  They take over the liabilities as well as the rights attaching to the shares purchased.  The shareholders at the time of the default of the corporation have cast upon them the entire liability imposed by the statute in question.

In equity.    On exceptions by certain defendants.    Overruled.

Bill in equity brought by the plaintiff, a creditor of the defendant corporation, The American Banking and Trust Company, in behalf of all the creditors of the defendant corporation and against sundry of the shareholders of the defendant corporation to enforce the liability of its shareholders imposed by the provisions of chapter 349, Special Laws, 1889, amendatory of its original charter, whereby its shareholders were made "individually liable, equally and ratably, and not one for another, for all contracts, debts and engagements of said corporation, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares."

The bill was taken pro confesso against certain of the defendants including The American Banking and Trust Company.    Other defendants answered and one defendant both demurred and answered. Certain amendments to the bill were allowed during the various proceedings.    Also eventually the bill was dismissed as to certain of the defendants named therein.

The cause was first heard on bill, answers, demurrer and evidence by the Justice of the first instance who overruled the demurrer, sustained the bill and referred the cause to a special master in chancery "to hear, determine and report upon all claims of creditors which are claimed to be secured by the statutory liability of the shareholders of the American Banking & Trust Company, giving the grounds of all claims owned respectively Dec. 29, 1896, and the equal and ratable amounts for which each shareholder is liable." Several defendants then excepted to certain rulings made by the aforesaid Justice.

Upon the coming in of the report of the master several defendants filed various exceptions thereto.    A hearing was then had on the acceptance of the report by the aforesaid Justice, who, after the hearing, overruled all the exceptions, ordered that the report be accepted and confirmed and made and entered final decree.

Several defendants then took exceptions to the ruling overruling their exceptions "to the report of the special master filed in said cause, confirming said report and entering final decree in accordance therewith."

The case appears in the opinion.

*Harry R. Coolidge,* and *Newall & Skelton,* for plaintiff.

*W. W. Bolster,* and *Oakes, Pulsifer & Ludden,* for W. W. Bolster et als., defendants.

*Reuel W. Smith,* for Benj. R. Redman, defendant.

*John A. Morrill,* for Auburn Savings Bank, defendant.

*C. Vey Holman,* for C. Vey Holman, Trustee, defendant.

*W. H. Judkins,* for Monmouth Academy, defendant.

SITTING : EMERY, C. J., WHITEHOUSE, STROUT, SPEAR, CORNISH, JJ.

EMERY, C. J.    The American Banking and Trust Company, a Maine banking corporation, stopped payment by vote of its directors Dec. 22, 1896.    Seven days afterward the Bank Examiner filed a bill in equity against the corporation for the sequestration of its assets and the appointment of a receiver to administer them. Two days later, Dec. 31, 1896, the decree of sequestration was signed and a receiver appointed, who took possession of all the assets of the corporation.    These assets were in time fully administered and distributed to the creditors of the corporation.    There was no surplus.

The corporation was chartered and began business in 1887 as the Maine Mortgage Loan and Investment Company, but in 1889 it changed its name to American Banking and Trust Company.    By an amendatory Act (Special Laws of 1889, ch. 349) additional powers as a banking company were granted the corporation and by section 6 of the Act its shareholders were made "individually

liable, equally and ratably, and not one for another, for all contracts, debts and engagements of said corporation, to the extent of the amount of their stock therein at the par value thereof, in addition to the amount invested in such shares." The present bill in equity is brought by a creditor of the corporation in behalf of all the creditors against sundry of its shareholders to enforce that liability. The case was heard upon bill, answers, demurrer and evidence, by a single Justice who made findings and rulings, and made a decree sustaining the bill and referring the case to a master. No appeal was claimed from his findings of fact but several exceptions were taken by different defendants to his rulings of law and the case is before the Law Court upon those exceptions only. The various exceptions have been exhaustively argued with numerous citations of cases by the several counsel for the defendants and by the counsel for the plaintiff. Of course all the briefs and the cases cited, numerous as they are, have been studied, but to answer every argument and comment on every case cited would consume so much space and make this opinion so very long, the parties and counsel must be content with our conclusions and briefly stated reasons therefor.

### THE EXCEPTIONS TO THE RULINGS OF THE SINGLE JUSTICE.

1.   Some of the defendants contend that there is not sufficient evidence that the amendment creating that liability of the shareholders was ever accepted by them. The fact that after the enactment of the amendment the shareholders allowed their corporation to continue in business and exercise the new powers provided in the amendment, and to make contracts, debts and engagements therein authorized, is sufficient evidence of their acceptance of the liability imposed upon them. No shareholder appears to have objected at the time. It is too late to object now after the contracts, etc., have been made. *Stanley* v. *Stanley*, 26 Maine, 191.

2.   The corporation stopped payment Dec. 22, 1896. Its assets were sequestered by decree of the court Dec. 31, 1896. This bill was not filed until Sept. 17, 1904. The defendants contend that this suit is therefore barred by the general six year statute of limitations.

Upon the question when the statute of limitations begins to run against a creditor seeking to enforce the statutory liability of shareholders for his debt against the corporation, there have been numerous, various and even conflicting decisions in other jurisdictions, but our duty is to construe our own statute in harmony with our own decisions and with what we think the better reason, even though we come to conclusions different from those of other courts.

Of course the statute of limitations does not begin to run against the creditor and in favor of the shareholder when the debt or other obligation is incurred by the corporation, but only when the shareholder becomes subject to a suit to enforce his liability. When does the shareholder become subject to such suit is, therefore, the determining question. One view is that it is when the corporation fails to pay, or, at least, when its assets are sequestered so it cannot pay. The other view is that it is when the creditor's remedies against the corporation and the assets of the corporation have been exhausted. Under the former view the creditor immediately upon default of the corporation can ignore the corporation and its assets, can pursue the shareholders alone, collect of them his debt against the corporation, and leave them to bring their own suits against the corporation for recoupment, though it might in the end appear that the corporate assets were ample to pay all the corporate debts and hence that the suits against the shareholders were unnecessary and vexatious. Individuals and corporations often default for want of ready cash to meet obligations when due, though they have ample assets eventually to pay all their obligations in full. Under the latter view the creditor cannot ignore the corporation, his direct and principal debtor, upon its default, and cannot burden the shareholders with suits until the necessity therefor is shown by an exhaustion of the corporate assets. Evidently the liability of the shareholder is heavier and more severe under the former than under the latter view.

We think the latter view is the correct one to take of the statute imposing the liability in this case. The statute imposes a new liability before non-existent, and hence if susceptible of more than one construction it should receive that imposing the lightest burden.

The shareholder is not made liable "on" the contracts, debts and engagements of the corporation, but only "for" them. He cannot be joined in any suit against the corporation on such contracts, etc., because he is not a party to them, nor can the corporation or its receivers sue him, since his liability is not to them or for them, but only "for" the creditors. It is no part of the corporate assets. It is a liability apart and distinct, in origin and character, from that of the corporation. The creditor's claim is primarily against the corporation and only secondarily against the shareholder. The creditor's remedy against him, to use a military metaphor, is a reserve force to be brought into action only when necessary, only when it becomes apparent that the remedy against the corporation has failed.

We hold, therefore, that under the statute in this case the shareholder is not to be vexed with suits, and hence the statute of limitations does not begin to run until the assets of the debtor corporation are fully exhausted, nor until it has been judicially ascertained in proceedings against the corporation that a resort to the statutory liability of the shareholders is necessary.

In so holding we hold nothing new, but are following the reasoning in the cases in this State. *Longley* v. *Little*, 26 Maine, 162; *Hewett* v. *Adams*, 50 Maine, 271; *Morris* v. *Porter*, 87 Maine, 510; *Gillin* v. *Sawyer*, 93 Maine, 151; *Childs* v. *Cleaves*, 95 Maine, 498; *Pulsifer* v. *Greene*, 96 Maine, 438; *Hale* v. *Cushman*, 96 Maine, 148; *Abbott* v. *Goodall*, 100 Maine, 231. The same view was incidentally expressed by the court in *Maine Trust Company* v. *Southern Loan Company*, 92 Maine, 444, where the court said on page 452. "So must the assets of the corporation be exhausted before this liability be incurred."

It is urged in argument that by such a holding the burdens of the shareholders are increased; that they are disabled from discharging themselves from liability; that the creditors can delay almost indefinitely their proceedings against the corporation and thus prolong the liability of the shareholders against their will. The shareholders, however, are not helpless. They can so conduct the affairs of their corporation that there shall be no default in its

obligations. They can themselves apply the corporate assets to the payment of the corporate debts. That their assets are sequestered and receivers appointed is rather the fault of the shareholders than of the creditors, but even then the shareholders can compel the receivers to proceed with reasonable vigor and speed to a full administration.

In the proceedings against the corporation in this case it was not judicially ascertained until May, 1904, at least, that the corporate assets were exhausted and that a resort to the shareholders was necessary. This bill was filed Sept. 17, 1904 and hence is not barred by the six year statute of limitations.

3. But some of the defendants contend that if the right of action against them did not accrue until it was judicially ascertained that the corporate assets were exhausted, then this bill was prematurely filed. The final account of the receiver was filed May 7, 1904 and showed a full disbursement of all his receipts. On Sept. 13, 1904, this final account was settled and the court entered a decree that the account, being final and "showing a complete disposition of the assets of the corporation and no balance remaining in his hands, is hereby accepted, approved and allowed." The report of the commissioners on claims had previously been filed and accepted, showing the amount of the debts of the corporation. The receiver's accounts allowed showed how much of the indebtedness had been paid and when. These two amounts had thus been judicially ascertained and declared. It had also been adjudicated that the assets had been fully administered and exhausted. The deficiency of assets, if any, and the amount of the deficiency then appeared of record. There was no need of a further decree of the court to establish a mere mathematical truth. We agree with the single Justice that to acquire such a decree would be finical in the extreme. This bill not having been filed until after the decree of Sept. 13, 1904 was not prematurely filed.

4. Upon the appointment of a receiver for the corporation, commissioners were also appointed by the court to determine the claims against the corporation and were instructed to allow such

interest as would accrue up to the date of the receivership Jany. 1, 1897. They executed their commission according to those instructions and made their report showing the amounts due at that date. Upon these claims thus allowed, payments were made from time to time by the receiver as he realized from the assets, the last payment being made Nov. 12, 1903. The sum of these various payments only equals the amounts of the debts allowed to be due Jany. 1, 1897. The interest accrued since that date remains unpaid.

The defendants now contend that the shareholder's liability does not extend to such interest. As supporting this contention many cases are cited, but nearly all of them are cases of proceedings against the corporation and can be eliminated by conceding, arguendo, that, as between the creditor and the corporation and its sequestered assets in the hands of its receivers, interest beyond the date of the receivership cannot be recovered unless there are surplus assets after paying the indebtedness of that date; that when the corporate assets are exhausted the remedy against the corporation is exhausted. Moreover in all these cases it is held that where there is a surplus of assets, it shall be applied to the payment of such interest before any distribution is made among shareholders. When, however, the corporate assets are exhausted and the corporation by a court decree, in pursuance of the statute, is enjoined from transacting any further business, the corporation has become civiliter mortuus. It has then no legal rights nor liabilities except to formal dissolution. The liabilities of its receivers or other representatives are fully discharged when they have administered its assets. If nothing remains for the payment of subsequent accrued interest, creditors have no remedy against the corporation, its assets or receivers for such interest.

But though the corporation and its receivers may thus be freed from actions by creditors to recover claims for interest or other claims, it does not follow that the contracts, debts and engagements of the corporation have been fulfilled. If the contract, debt or engagement is such that interest accrues for delay in fulfillment, it is not fulfilled until that interest also is paid. Whoever is made

liable by contract or by statute for those contracts, debts and engage-
ments is made liable for the interest accrued and accruing on them.
The liability of the shareholders for them and for the interest on
them is not discharged when the corporation is dissolved.  It con-
tinues until they are fulfilled, interest as well as principal.  It was
imposed to ensure that fulfillment in case the corporation should
become defunct before itself fulfilled them.  The creditor then
acquired the same right against the shareholders to recover principal
and interest (of course not in excess of their maximum liability fixed
by the statute) that he would have had against the corporation had
it continued solvent and possessed of its assets.  *Richmond* v. *Irons,*
121 U. S. 27.  The cases *Crease* v. *Babcock,* 10 Met. 525, and
*Grew* v. *Breed,* 10 Met. 569, were suits by bill holders against
shareholders in banks of issue and were decided upon the ground
that the then Massachusetts statute did not provide for interest on
bank bills.

The defendants cite from the Maine statute relative to claims
against insolvent banks, the last clause of sec. 66 of ch. 47 of R. S.
of 1883 (in force when the proceedings against the bank in this
case were begun) as follows:  "All claims allowed shall bear
interest from the time they are filed, *provided* that the assets in the
hands of the receivers are more than sufficient to pay the principal
of all the claims allowed and outstanding when the final dividend is
declared."  The original of this clause is found in Laws of 1872,
ch. 86, sec. 3, which enacts that sec. 71 of ch. 47 of the R. S. of
1871 "shall not be construed to require the payment of interest on
claims against the bank unless the assets, etc."  The argument is
that that statutory limitation upon the payment of interest is to be
read into every contract and obligation of the bank and hence that
its shareholders are entitled to the benefit of that limitation.  That
statute, however, was designed for banks of issue, where the liability
of the shareholders was different in many respects from that imposed
by the statute in this case, and was enforceable only by the receivers.
But even that statute does not declare the bank's contracts and
obligations to be fulfilled by the failure of the bank and the appoint-

ment of the receivers. It simply limited the powers of the receivers of such banks and thereby limited the liability of those shareholders. In this case the creditors, and they only, have the right to enforce the liability imposed by its charter upon the shareholders of this corporation. That liabilty is for *all* the contracts, etc., of the corporation. There is no exception nor condition, except that it shall not exceed the par value of their shares.

5. The defendants claim, however, that an action cannot be maintained for interest alone and hence this proceeding cannot be maintained for interest. It is true that one action cannot be maintained for the principal of a debt and a separate action for the interest. It is also true that when a creditor has accepted payment of the principal in full for his claim or debt, he cannot afterward maintain an action for the interest. The interest is incident to the principal debt and not a separate debt unless so stipulated in the contract. In this case, however, there has been no action to recover the principal, and there has· been no acceptance, nor even offer of payment, of the principal in full for the debt. The proceedings against the corporation were for the sequestration and division of its assets. The sums received by the creditors from those assets were received as dividends, not as payments. They were, of course, applicable to the debts as they were received but their reception and application entailed upon the creditors no forfeiture of the accruing and accumulating interest.

It is urged that to hold the shareholders responsible for interest accruing during the delays of administration is a hardship upon them. It would be an equal hardship upon the creditors to hold that they must lose the interest, through no fault of theirs. The responsibility for the failure of the corporation, for the necessity, for the sequestration and administration of its assets, and for the delay and expense entailed, is more upon the shareholders than upon the creditors. It is not, however, a question of hardship but of legal right. The enforcement of even unquestioned legal rights sometimes inflicts great hardship, but the court cannot for that reason stay its hand.

6.    Through the misconduct of the first receiver appointed, some $6500 of the assets of the corporation were irretrievably lost.    Who must bear the loss, the creditors or the shareholders?    We think the loss fell upon the shareholders and that there it must remain. Though the assets were in the custody of the court through a receiver by it appointed and controlled, they were still the property of the corporation and its shareholders, until administered.    The loss was their loss even if from causes beyond their control.    The risk of that loss they assumed when they so managed the affairs of the corporation that a receivership became necessary.

7.    A demurrer to the bill was filed but the bill with the amendments allowed by the single Justice, read in the light of the foregoing, will show sufficient grounds for its maintenance.    The objections to the bill are practically disposed of by the propositions above laid down.

### EXCEPTIONS TO THE REPORT OF THE MASTER.

The bill having been sustained, the case was referred to a master to ascertain the amount and nature of the claims of the creditors within the statutory liability of the shareholders, also the names of the shareholders, the number of shares owned by each, and the ratable amount of the liability of each share.    Upon the coming in of the report of the master, various exceptions to it were filed, which were all overruled by the single Justice and the report accepted. Exception was taken from that ruling.

Some of the exceptions to the master's report are disposed of by propositions already laid down upon the questions above considered. We have therefore, only to consider the other exceptions not thus disposed of.

1.    Some of the claims were against the corporation as guarantor of certain notes and mortages sold and assigned by it to purchasers. The guaranty was as follows:    "For value received, the within named American Banking and Trust Company hereby guarantees the payment of the within note and interest coupons thereto attached, when due and payable, without notice of any neglect on the part of the payors thereof.    The mortgage securing their payment to be

reassigned in due form." The promisors having failed to pay at maturity, the holders of these guaranteed notes and mortages presented their claims therefor to the commissioners which claims were allowed. It is contended by the defendants that for want of a demand made upon the bank for payment of these notes and mortgages no interest runs against it. We think the vote of the directors to stop payment and the immediately following sequestration of its assets, deprived the bank of all right to insist upon a demand. The evident inability and the declared resolution not to pay, if demanded, made a demand useless and therefore unnecessary. All claims due upon demand, including those under the guaranty in question, then became due and payable, and, unless otherwise stipulated in the contract of guaranty, interest began to accrue against the guarantor.

2. It is also contended by some of the defendants that the holders of these guaranteed notes and morgtages should first have proceeded against the promisors. But there was no such stipulation. The guaranty was unconditional, dispensing even with notice of the default of the promisor. The holder could proceed at once against either. *Cooper* v. *Page*, 24 Maine, 73.

3. After the appointment of the receiver, the holders of these guaranteed notes and mortgages proved against the corporation their claims under its guaranties, and assigned the notes and mortgages to the receiver as they had stipulated to do to the corporation. The receiver collected more or less of them from the makers. Had he paid the proceeds over to the respective holders, they would have been paid in full and thus eliminated from the case. Instead of doing this, the receiver turned all the proceeds into the general fund, all of which was administered and distributed pro rata among all the creditors. The result was that the holders of the guaranteed notes and mortgages only received a partial payment pro rata with the general creditors. Can they be reckoned in this proceeding as creditors for the balance remaining unpaid? This question, so far as appears, is academic rather than practical. If the proceeds had all been paid to the holders, the dividends to the other creditors would have been so much less, and the balance of indebtedness to

them to be paid by the shareholders so much more. The burden upon the shareholders would have been nearly the same in either event. We do not think, however, the holders of the guaranteed notes and mortgages are to be excluded from consideration because of the action of the receiver. He was the bank's representative, performing its duties so far as its assets would permit. The money or other property received upon these notes and mortgages were passed to the general fund as the bank would have done. The court ordered them paid out in dividends to all the creditors. The shareholders made no objection at the time, and it is too late now, the decree having been made, the money paid out, and those proceedings closed.

4. When the bank or corporation voted to stop payment and its assets were sequestered all its deposits became immediately due and payable without formal demand, except such as were on some specified time which had not then elapsed. Whatever interest the bank had agreed to pay upon these deposits, it became liable for the legal rate of six per cent from and after its default, unless otherwise stipulated, which does not appear to have been done as to any deposit in this case. *Eaton* v. *Boissonnault*, 67 Maine, 540. It has been held in some cases that a demand for payment of bank currency bills is necessary even after failure of the bank if the bill holder wishes to recover interest. We do not think those cases applicable to deposits under our statute.

5. In some cases the persons appearing on the stock ledger as owners of shares, really only hold them as security for loans, made to the real owners. This fact, however, did not appear upon the books of the bank nor upon the share certificates. So far as there appeared, the persons named as owners were the actual owners. As to the corporation and its creditors, they were the owners and as such were within the statutory liability of shareholders. *Crease* v. *Babcock*, 10 Met. 525.

6. Upon the stock ledger of the corporation the word "trustee" appeared after the name of one shareholder. That shareholder contends in his answer and argument that he invested the entire trust fund in those shares and that as there is nothing left of that

fund he should not be held personally liable. Even if such facts would exempt him from the liability, no evidence of them was reported to the Law Court. So far as appeared, he purchased the shares, became the legal owner, and entitled himself to the dividends on them as well as to represent them in corporation meetings. He thereby assumed the statutory liability attached to them. The addition of the word "trustee" was only descriptio personae. Even if the statute R. S., ch. 47, sec. 84, applies to a case like this, it was not enacted till 1897 after the liability in this case had become fixed.

7. The shareholders purchased their shares at different times, some before and some after particular contracts, debts and engagements upon which the corporation defaulted, were entered into. This fact does not make any difference in their liability under the statute in question, whatever might be the effect under other statutes. No distinction is made by the statute and none can be made by the court. Those who were shareholders at the time of the default have the entire liability cast upon them, those who purchased at the eleventh hour as well as earlier purchasers. The purchaser of shares took the risk of the financial condition of the corporation, good or bad, as it was at the time of his purchase, as well as the future risks. He took over the liabilities as well as the advantages attaching to the shares. *Curtis* v. *Harlow*, 12 Met. 3, *Maine Trust Co.* v. *Southern Loan Co.*, 92 Maine, 444, page 452.

Though numerous exceptions were taken by different defendants it is not expedient to recite and discuss every one seriatim since all the questions of law raised by any of them are decided in the foregoing opinion. . The rulings of the master and the single Justice were in accord with what we above hold to be the law, and hence the exceptions must be overruled and the decrees of the single Justice be affirmed, and with costs.

*So ordered.*