**BRUSSELBACK et al. v. CHICAGO JOINT STOCK LAND BANK.**

**GAGE et al. v. W. E. BRUSSELBACK et al.**
No. 5719.

Circuit Court of Appeals, Seventh Circuit.
Sept. 21, 1936.

James G. Condon and John M. Tuohy, both of Chicago, Ill., for appellants.

Morris Townley, J. Arthur Miller, and Don Kenneth Jones, all of Chicago, Ill., for appellees.

Before SPARKS and ALSCHULER, Circuit Judges, and BRIGGLE, District Judge.

ALSCHULER, Circuit Judge.

Appellants seek reversal of a decree in equity finding the Chicago Joint Stock Land Bank (herein called Bank) to be insolvent, and ordering an assessment of 100 per cent. upon its shareholders, and appointing as receiver to collect it the same person who was appointed receiver by the Federal Farm Loan Board to wind up the affairs of the Bank.

The bill as originally filed October 1, 1932, charged that the Bank was insolvent; and prayed that the assets of the Bank be administered by a judicial receiver to be appointed by the court instead of by the statutory receiver appointed by the Farm Loan Board, and that the shareholders' statutory liability be fixed and assessed, and ordered paid to a judicial receiver. The District Court held that the statutory receiver was the proper person to administer the assets, and denied a motion for the appointment of a judicial receiver. Brusselback v. Chicago Joint Stock Land Bank of Chicago et al., 1 F.Supp. 736. Thereupon that court made an order directing that the cause of action which sought to fix and enforce the shareholders' statutory liability be separated from that which sought judicial administration of the Bank's assets.

Pursuant to this order two amended bills were filed; one seeking to assess and enforce the shareholders' liability, filed December 7, 1932, and the other to have judicial administration of the assets of the Bank. Holding, as above stated, that the receiver named by the Federal Farm Loan Board was the proper administrator of the assets, the District Court dismissed the last-named bill, and on appeal to this court that decree was affirmed. Brusselback v.

Chicago Joint Stock Land Bank et al., 69 F.(2d) 598, certiorari denied, 292 U.S. 641, 54 S.Ct. 774, 78 L.Ed. 1493.

Answers to the first above-named amended bill were filed by various shareholders, including appellants, and motions to dismiss were overruled; and the cause was referred to a master, who heard the evidence, and filed his report finding that the Bank was insolvent and fixing the liability of its shareholders at one hundred per cent. of the par value of their respective stock holdings. The court overruled exceptions to the master's report, and sustaining the report entered a decree for appellees as above stated.

For appellants many propositions are put forth, whereof we shall discuss such only as we deem of sufficient import. It is contended that there is here no diversity of citizenship, and that therefore the federal court does not have jurisdiction. It is replied that there is involved a federal question whereof the federal court has jurisdiction regardless of diversity of citizenship. Wyman v. Wallace, 201 U.S. 230, 26 S.Ct. 495, 50 L.Ed. 738. But appellants contend that the 1925 amendment to the Judicial Code (28 U.S.C. § 42 [28 U.S. C.A. § 42]) removed such cases from the jurisdiction of the federal courts in providing that "No district court shall have jurisdiction of any action or suit by or against any corporation upon the ground that it was incorporated by or under an Act of Congress." But it is evident that this amendment has application only where the fact of federal incorporation was of itself the basis of the federal jurisdiction. See Bankers' Trust Co. v. Texas & Pac. Ry., 241 U.S. 295, 307, 36 S.Ct. 569, 60 L. Ed. 1010.

Here, however, there is a federal question other than the mere fact of incorporation under federal law, since the liability of shareholders is predicated wholly upon section 16 of the Federal Farm Loan Act (12 U.S.C. § 812 [12 U.S.C.A. § 812]), which provides: "Shareholders of every joint-stock land bank organized under this chapter shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such bank to the extent of the amount of stock owned by them at the par value thereof, in addition to the amount paid in and represented by their shares." The action, being thus predicated upon a federal law, is within the juris-

diction of the federal court regardless of the citizenship of the parties, provided there is involved the jurisdictional amount.

For appellants it is contended that when Brusselback originally filed his bill he held only $4,000 of the bonds, $2,000 due in 1964 and $2,000 in 1965, with no provision for acceleration of the debt in case of default in interest payment; that only $45 of interest was due at the time at which the bill was filed; that therefore the jurisdictional amount of $3,000 was not involved; and that the subsequent joining of other plaintiffs by amendment will not supply the element of jurisdictional amount, because their claims did not accrue until after the filing of the original bill.

Section 29 of the Federal Farm Loan Act (12 U.S.C. § 963 [12 U.S.C.A. § 963]) provides: "Upon default of any obligation, Federal land banks and joint stock land banks may be declared insolvent and placed in the hands of a receiver by the Federal Farm Loan Board, and proceedings shall thereupon be had in accordance with the provisions of this section regarding national farm loan associations." There was here the finding of insolvency by the Federal Farm Loan Board and the appointment of a receiver for the administration of the Bank's assets. This, however, has been held to be not such a finding of insolvency as will bind shareholders, nor of itself authorize an assessment of their statutory liability. Wheeler v. Greene, 280 U. S. 49, 50 S.Ct. 21, 74 L.Ed. 160.

The amended bill asserted the insolvency of the corporation and a deficiency in the assets to meet its liabilities, and prayed the court to make the assessment and to appoint a receiver to collect it. If the bill were sustained, and the Bank's insolvency appeared and the deficit were found to be not less than the shareholders' full statutory liability, the liability on the Brusselback bonds would not be limited to the amount of the matured interest, but would be the face of his bonds with interest. Pennsylvania Steel Co. v. New York City Ry. Co. (C.C.A.) 198 F. 721, 738. Upon the bill there is thus involved on the Brusselback bonds over $4,000—more than sufficient to sustain federal jurisdiction.

Besides, as above stated, after the cause had proceeded for a time under the original bill the court deemed that there were in essence two matters involved, each of which should be the subject of a separate bill, and ordered the filing of two separate bills in place of the one. Although the original bill (as well as the amended bills) specified that it was brought in behalf of Brusselback and all other bondholders and other creditors, when the so-called amended bills were filed this bill included as one of the complainants certain trustees of a trust holding $128,000 of the bonds, on which there came due, after the original bill was filed and before the filing of the amended bill, interest of $3,-200, which was unpaid when the bill was filed. We believe, as to this question the filing of these separate bills should be considered in the light of the bringing of new suits on the date of their filing, and that the then accrued interest on these trustee-held bonds alone supplied the jurisdictional amount.

Such of appellants whose shareholdings were less than $3,000 par make the contention that since, as to each of them, the maximum of recovery would be less than $3,000, the jurisdictional amount is not involved, and the court is therefore without jurisdiction over them. Upon this proposition we are impressed with what was said by the Circuit Court of Appeals for the Sixth Circuit in the case of Robertson v. Conway, 188 F. 579, where what we consider a like question was involved. It was there held that the liability of the various shareholders constituted a trust fund for the payment of all corporate creditors whose claims the corporate assets are insufficient to meet (up to the par of the stock held by the various shareholders), and that all may be joined in the action. To substantially the same effect, so far as here applicable, is Alsop v. Conway, 188 F. 568, decided by the same court at the same time. The same question arose in Brusselback et al. v. Cago Corp. et al., 85 F.(2d) 20, very recently decided by the Circuit Court of Appeals for the Second Circuit. There the same conclusion was reached as in Robertson v. Conway, which was cited as authority. There was also cited with approval R. F. C. v. Central Republic Trust Co., 11 F.Supp. 976 (D.C. N.D.Ill.), wherein on a similar question the same conclusion was reached. We are in accord with the final paragraph of the opinion in the Cago Corporation Case, stating: "The contention of some of the appellees that since the amount claimed against them is less than $3,000, the court

is without jurisdiction, is erroneous. The court has jurisdiction over the fund sought to be collected here and such jurisdiction necessarily carried with it jurisdiction over all component parts of the fund. Hence the fact that liability of certain stockholders may be less than $3,000 does not deprive the court of jurisdiction as to them."

■ Appellants insist that under the statute the liability of the shareholders is secondary only, and may not be invoked until after the assets of the corporation have been exhausted, and that, therefore, this action was prematurely brought and cannot properly be sustained. There has been much contrariety of decision on the question of what is primary and what is secondary liability, and in many cases the liability of shareholders to assessment has been referred to as secondary. See National Bank of Metropolis v. Kennedy, 17 Wall. 19, 22, 21 L.Ed. 554; Flynn v. American Banking & Trust Co., 104 Me. 141, 69 A. 771, 19 L.R.A.(N.S.) 428, 129 Am. St.Rep. 378; Assets Realization Co. v. Howard, 211 N.Y. 430, 105 N.E. 680. We are of the view that, under a statute such as that which here creates the liability of shareholders, whenever it appears that the corporation is insolvent, the shareholders' liability becomes available, and may be at once resorted to for meeting the deficiency. This was held to be so in Terry v. Tubman, 92 U.S. 156, 23 L.Ed. 537, where it was held that the statute of limitations upon an action to recover such a shareholder's liability would begin to run from the time "when the bank refuses or ceases to redeem and is notoriously and continuously insolvent," and not from the time that the assets of the bank were exhausted, which in that case was several years after the insolvency was ascertained.

The Tubman decision is referred to, apparently with approval, by the Supreme Court in Wheeler v. Greene, 280 U.S. 49, 50 S.Ct. 21, 74 L.Ed. 160, wherein it was held that under the provisions of the Federal Farm Loan Act the shareholders' liability is enforcible not by the Farm Loan Board, nor by its receiver, but by a court of equity.

We believe that a public policy manifested by provision for shareholders' liability to the extent of the par of their stock would indicate that when the insolvency becomes manifest the shareholders' liability be at once availed of by the creditors, instead of awaiting the expiration of the proverbially long and very indefinite period for realization upon the corporate assets, during which much of the shareholders' liability would in all likelihood become unavailing. This has been recognized as an influential feature in a number of cases. Kennedy v. Gibson, 8 Wall. 498, 19 L.Ed. 476; Pate v. Bank of Newton, 116 Miss. 666, 77 So. 601.

■ It is contended for appellants that because it does not appear that any of the over $42,000,000 of the outstanding bonds of the Bank had matured, the court erred in decreeing that the Bank was insolvent. The bonds themselves have no provision for acceleration of their maturity in case of default in payment of their stipulated interest; but they are the absolute obligation of the Bank regardless of the time they mature. Whether the Bank is or is not solvent does not depend upon the time of the maturity of its obligations.

Insolvency is a term which has been variously defined. The Bankruptcy Act states: "(15) a person shall be deemed insolvent within the provisions of this title whenever the aggregate of his property * * * shall not, at a fair valuation, be sufficient in amount to pay his debts." 11 U.S.C. § 1(15), 11 U.S.C.A. § 1(15). For the purpose of a statutory receivership under the Federal Farm Loan Act it is there provided: *"Upon default of any obligation,* Federal land banks and joint stock land banks may be declared insolvent and placed in the hands of a receiver by the Federal Farm Loan Board." 12 U.S.C. § 963 (12 U.S.C.A. § 963).

Insolvency as defined in this act is not limited to any particular function or operation. The act specifies that when such a bank is insolvent as defined in the act, the Farm Board may appoint a receiver for it.

In Wheeler v. Greene supra, it was held that such a receiver was not empowered to assess and collect from the shareholders their statutory liability, but that this function fell within the province of a court of equity. In the ascertainment by the court of the extent, if any, of the Bank's liabilities over its assets, it is not important whether the obligations have or have not matured. And this is especially so where, as here, the Bank had long ceased to be a "going concern," and had for some years made no new loans, but had confined its operations mainly to the conservation and liquidation of its loans outstanding, many of them be-

ing in default in interest or principal or both.

Charged with the ascertainment of the amount of the deficiency, if any, of the Bank's assets to meet its debts, and the extent, if any, of the shareholders' liability, the master appointed by the District Court heard the evidence and found the Bank to be insolvent, and the deficiency of its assets to meet its liabilities to be upwards of $12,000,000, and the liability of the shareholders to aggregate $4,000,000; and that the shareholders should be assessed on that liability one hundred per cent. of the par value of their stock holdings. The District Court approved the master's report and decreed an assessment of the shareholders accordingly.

■ The contention is made by appellants that there is no evidence to show that at the time of the filing of the original bill (October 1, 1932) the Bank was insolvent, and that insolvency at that time is necessary to be shown to sustain the decree. In support of the legal proposition the cases of People v. Clark, 329 Ill. 104, 160 N.E. 233, and People v. Paisley, 288 Ill. 310, 123 N.E. 573, are cited. These cases arose under indictments for doing certain acts at a time when the corporation was insolvent. It is plain that to sustain a charge primarily involving the criminal intent of a defendant, the insolvency must appear as of the time when the acts were done. Here the purpose of the suit is to assess and collect so much of the shareholders' liability as may be found to be reasonably necessary to meet a deficit in the corporate assets to discharge the debts, regardless of the particular time at which the deficit came into being. Assuming the bill to have been filed and prosecuted in good faith (and there is here no evidence or claim to the contrary), if such deficiency appears from the evidence at any time up to entry of the decree of the court, in our judgment it will be sufficient to sustain a finding and decree to that effect.

■ It is earnestly contended that the evidence of insolvency appears solely from the testimony of persons who did not have personal knowledge of the various properties whereon the Bank held mortgages, nor of the financial responsibility of the various persons who had executed and were personally liable for the mortgage notes given the Bank, and was therefore incompetent.

The Bank was organized in 1917, and from time to time thereafter issued and sold its capital stock, which, at the time the bill was filed, amounted to $4,000,000. It made loans upon Illinois and Iowa farms, taking the notes and mortgages of the various persons to whom the loans were made. As the loans were made they were put up as security for bonds which the Bank from time to time sold, of which bonds it had outstanding at the time the bill was filed over $42,000,000. It appears from the evidence that as far back as 1926 conditions were such that the Bank ceased thereafter to make further loans, and thenceforth devoted itself to the collection and conservation of loans then outstanding. At the time the bill was filed the uncontradicted evidence indicates that the Bank held such mortgages to the face amount of over $22,000,000, together with accumulated interest; that it had foreclosed mortgages and bought in mortgaged property, and was holding the same or certificates of purchase thereof, to the extent of over $12,000,000, measured by the cost to the Bank; and that it had deficiency judgments growing out of foreclosure proceedings against various of its mortgagors to the book value amount of $701, these judgments being carried on the Bank's books at one dollar each.

The evidence respecting the value of these items was given by the statutory receiver of the Bank, who had been in its employment and was closely associated with its affairs since January, 1928, having been its president for about two and one-half years preceding his appointment as receiver. The other witness who testified respecting these matters was the auditor for the Bank for many years, as well as for the statutory receiver. These men testified that one or the other of them, or both of them, during their responsible employment with the Bank had from time to time seen many of the farms and had made inquiries about them or their owners. It was testified that when the receivership was constituted about fifty persons, chosen for their special knowledge of such matters, were sent out to look over the various properties on which the Bank held mortgages or which it had bought on foreclosure, and so forth, and that these men had spent a year in such an examination, and made their reports to the receiver, which were carefully compiled; and the receiver, in addition to having their re-

ports, had interviewed these investigators respecting the value of the properties and the collectibility of the notes and judgments. It appears further that during the first two years of the statutory receivership about half of these various assets of the Bank were liquidated, and that the realization thereon was about $3,000,000 less than the amount at which they had been carried on the Bank's books, which was in every instance their cost to the Bank. It further appears that the obligation of the Bank upon its bonded indebtedness was constantly increasing through the maturing interest on its outstanding bonds.

Various schedules and lists were in evidence showing the items and computations thereof, seemingly made in the regular course of the business of ascertaining and realizing upon the Bank's assets. It seems that when the statutory receiver was appointed there were 3,133 of these mortgage loans, exclusive of 593 mortgage loans in process of foreclosure, a total of 3,726. There were 386 sheriffs' certificates; 508 farms owned; 182 real estate contracts; 144 purchase money first mortgages; 38 purchase money second mortgages; and 370 accounts receivable. To have presented full evidence of the status of each one of these approximately 5,300 transactions would have involved time, effort and expense which would practically have neutralized and made prohibitive any net realization upon the statutory shareholders' liability.

■ Under these extraordinary circumstances it is our judgment that the best evidence that could in such case be reasonably adduced was here submitted—the evidence of persons long and intimately familiar with the history and the business of the Bank, persons who were concerned with all its various details, and who had had control of and close contact with its affairs. These persons, with their actual experience in realizing upon and about one-half of the Bank's assets of the same nature, coupled with their long and complete knowledge of all its assets, and the thorough investigation made following the commencement of the statutory receivership, were in our judgment abundantly qualified to express a judgment as to what the remaining assets of the Bank would in all likelihood realize, and as to how much of a deficiency in assets to meet liabilities there would be after such realization.

It does not require persons to be endowed with the gift of prophecy to entitle them to express a judgment upon such a situation which will be competent and may be accepted as a basis for the ascertainment of a deficiency with sufficient accuracy to predicate thereon a decree of the court fixing the amount of the shareholders' statutory liability—an amount not hard and fast, as in the case of judgments or decrees generally, but subject to such future adjustment as the more definite ascertainment through the administration of the corporate assets may in equity and good conscience require.

It must be borne in mind that in similar relations, both under the federal law and the laws of many of the states, such statutory liability is in the first instance assessed and collected by administrative agencies, and if done in good faith is not subject to appeal to the courts, nor to correction by them, but is final, save only as subject to such correction and adjustment as future developments may require.

We believe that the evidence given on the subject of the deficiency of the Bank's assets to meet its obligations was competent, and considered in the light of the very general and great depreciation in farm values since 1929 it well supports the court's decree, which is hereby affirmed.