GEORGE J. GOULD and Others, as Executors of and Trustees under the Last Will and Testament and Codicils Thereto of JAY GOULD, Deceased, Appellants, *v.* THE TEXAS AND PACIFIC RAILWAY COMPANY, Respondent.

First Department, February 16, 1917.

Corporations — residence or domicile of corporation for purposes of judicial procedure — Federal corporation having governmental offices in State of New York but operating railroad in foreign States — when property not subject to attachment as foreign corporation.

Where a railroad corporation was organized under the laws of the United States for the purpose of constructing a railroad in States other than the State of New York, and the charter and certificate of incorporation did not specify where the main office of the corporation should be located, but did specifically authorize the incorporators to meet in the city of New York to elect directors, etc., and said company has for many years maintained at all times its executive offices in the city of New York, where all the annual meetings of stockholders and directors have been held, it is a domestic corporation under the terms of sub-division 18 of section 3343 of the Code of Civil Procedure, for the purpose of determining whether its property is subject to attachment as a foreign corporation. And this is so although the general offices for the actual operation of the railroad plant are located in the foreign States through which the railroad runs and although its revenues are there received and disbursed.

For the purposes of judicial procedure the residence or domicile of a corporation is the seat of the government, and it makes no difference where the administrative departments and the physical property of the corporation happen to be located.

*It seems*, that a corporation may be located in several States although it has but one principal place of business.

APPEAL by the plaintiffs, George J. Gould and others, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 14th day of December, 1916, vacating an attachment against the property of the defendant.

*Robert B. Knowles*, for the appellants.

*Howard Taylor*, for the respondent.

Order affirmed, with ten dollars costs and disbursements, on opinion of SHEARN, J., at Special Term.

Present — CLARKE, P. J., SCOTT, PAGE and DAVIS, JJ.

The following is the opinion of the court below:

SHEARN, J.:

What fact determines whether a corporation created under the laws of the United States is *located* in the State of New York? Upon the answer to this interesting question depends the validity of the attachment sought to be vacated on defendant's motion. The attachment was issued upon the averment that the defendant is a foreign corporation. Article 1, section 3, subdivision 5, of the General Corporation Law (Consol. Laws, chap. 23; Laws of 1909, chap. 28) provides that " A ' domestic corporation ' is a corporation incorporated by or under the laws of the State or Colony of New York. Every corporation which is not a domestic corporation is a foreign corporation, except as provided by the Code of Civil Procedure for the purpose of construing such Code." The question involves a matter of procedure, and in such case the Code provisions are controlling. Subdivision 18 of section 3343 of the Code of Civil Procedure provides that " A ' domestic corporation ' is a corporation created by or under the laws of the State; or located in the State, and created by or under the laws of the United States, or by or pursuant to the laws, in force in the Colony of New York, before the 19th day of April, in the year 1775. Every other corporation is a ' foreign corporation.' " The decisions of the United States Supreme Court with respect to the citizenship of corporations under the laws of the United States are not in point, for the question is not one of citizenship, but is merely whether the defendant is located in this State. The defendant railroad company was organized and created by virtue of the laws of the United States. Its original charter was an act of Congress, approved March 3, 1871. (See 16 U. S. Stat. at Large, 573, chap. 122.) It was created for the purpose of constructing and maintaining a continuous railroad from a point in Harrison county, Tex., to El Paso, in that State; thence through New Mexico and Arizona to San Diego, Cal. Unlike most

charters and certificates of incorporation, this charter did not specify where the main office of the corporation should be located. It did, however, specifically authorize the persons named as incorporators to meet in the city of New York for the purpose of obtaining subscriptions to the capital stock, organizing the company and electing directors, who in turn were required to proceed immediately to elect officers. The proof shows that for a period of at least the last nineteen years the company has at all times had its executive offices in the city of New York. Mr. George J. Gould, one of the plaintiffs, has been since 1892 the defendant's president as well as a director. He has always had his offices at the defendant's executive offices. So likewise the office of the secretary and treasurer has been in the city of New York for the last nineteen years, as well as the office of one or more of the company's vice-presidents. Section 1 of the by-laws provides that the annual meeting of the shareholders of the company shall be held " at the office of the company in the City of New York." All of the shareholders' meetings have for the last nineteen years been held in the city of New York. For some few years prior to the death in 1912 of the company's then secretary and treasurer, Mr. Satterlee, the meetings of shareholders or directors, held in the city of New York, were for some undisclosed reason caused by Mr. Satterlee to be adjourned to meet in Texas, but it appears that there never was a quorum at any meeting except in the city of New York, and that not only was every meeting of shareholders and directors called for the city of New York, but that "the active meetings were always held in the City of New York." At a meeting of the board of directors held in the city of New York on June 8, 1914, at which the plaintiffs George J. Gould and Howard Gould were present, and also Finley J. Shepard, the husband of the plaintiff Helen G. Shepard, Messrs. George J. Gould, Howard Gould and Finley J. Shepard, as directors, voted in favor of a resolution that a special meeting of the shareholders of the company be called " to be held at the principal offices of the company, No. 165 Broadway, in the city of New York and State of New York." The defendant has two bank accounts in the city of New York and a safe deposit box there in which a large number of securi-

ties owned by the defendant have regularly been kept. In addition to its executive offices the company has in the city of New York a passenger department at No. 1246 Broadway and a freight department at No. 290 Broadway. The secretary keeps in the city of New York the minute books and records of the stockholders' and directors' meetings and also the stock certificate books, together with many books of account. On the other hand, the entire railroad property of the company is located in Louisiana, Texas and Arkansas. In 1886 the company was placed in the hands of receivers appointed by the Circuit Court of the United States for the Western District of Louisiana, and remained in their hands until October, 1888. The receivers established and maintained their general offices at Dallas, Tex. Since that time (with one brief exception, when the general offices concerned with operation were located at Marshall, Tex.) the company has located at Dallas, Tex., its general offices, consisting of the heads of departments, namely, the general management, covering the operation of the road and transportation of freight and passengers, the accounting department, the legal department for the State, the land and tax department and the supply department. Said offices are housed in a building owned by the defendant and erected for that purpose, occupied by some 200 officials and employees. The officials located there are the third vice-president, the general manager, the auditor, the general freight agent, the general passenger agent, the land and tax commissioner, the assistant secretary and treasurer, the master of transportation and the general attorney for the State of Texas. The books, papers and vouchers connected with said offices are kept at Dallas, Tex., and the revenues from the railroad and property of the company are there received and disbursed.

It thus fairly appears, as it seems to me, that the defendant's corporate government has long been located and conducted in the State of New York, and that its general offices for the conduct of the operating end of its business has been located in the State of Texas. Assuming, but not holding, that the determinating question is the location of the company's *principal* place of business, where is that place located on the state of facts disclosed ? At first blush there seems to

First Department, February, 1917.          [Vol. 176.

be force in the argument that, as the company was incor-
porated for the purpose of carrying on the business of trans-
portation, it is reasonable to say that its principal place of
business is where are located the general or administrative
offices of the heads of departments that conduct the actual
business of transportation. Not so, however, either on reason
or authority. The courts have passed on the question of the
location of the defendant's principal office. In the case of
*Texas & Pacific Railway* v. *Interstate Commerce Commission*
(162 U. S. 197) the railroad company denied that its principal
office was in the State of New York, but the Supreme Court of
the United States held that it was. In the same case, in the
Circuit Court of Appeals (*Interstate Commerce Commission*
v. *Texas & Pacific Ry. Co.*, 57 Fed. Rep. 948, 955), Judge
SHIPMAN said: "The charter does not declare where the prin-
cipal office of the company shall be. In fact, the stockholders'
meetings and directors' meetings are held in New York,
where also is the office of the president, first vice-president,
secretary, and treasurer of the company, and where the stock
certificate books and records of the stockholders' and directors'
meetings are kept. The New York office is thus the domicile
of the corporation, and the principal office, while the general or
administrative offices of the heads of departments are in
Texas." Of course these decisions do not conclude the plain-
tiffs in this case, but they are significant. There in nothing
to the contrary in *Matter of Dunn* (212 U. S. 374). But there
is sound reason, independent of authority, for holding that the
defendant's principal place of business is located in the city of
New York. While the business of the defendant is transpor-
tation, and its railroad is located in other States, and the
practical operation requires the presence of the operating heads
and all the employees in those States, it must be recalled that
in theory at least the management, direction and control of
the business of a corporation is in its board of directors. A
corporation's principal office or place of business is, therefore,
naturally and necessarily where is located the main office and
regular meeting place of the board of directors that manages,
conducts and directs the corporation's business. In other
words, the determining factor is the seat of the corporation's

government, and it makes no difference where the administrative departments and the physical property of the corporation happen to be located. In the case of *Rosenbaum* v. *Union Pacific R. Co.* (2 How. Pr. [N. S.] 45; affd., 100 N. Y. 617) an attachment was issued against the Union Pacific Railway Company, which was at that time operating under a Federal charter, and a motion was made to vacate the attachment on the ground that the Union Pacific Railway Company was a resident of the State of New York. The company had offices in New York, but the principal executive offices were in Boston. The court said: "It is not a foreign corporation which has its location and carries on its business in the city of New York. Within the meaning of the law its domicile is where its principal office is located. That does not appear, even by the original affidavits, to be in the city of New York. It is, in point of fact, as shown by the papers, in the city of Boston." That is a very analogous case, for there, as here, the railroad property was located and operated more than 1,000 miles away from the city where its executive offices were located, and the court held that the corporation was domiciled where its principal office was located, namely, in the city of Boston. But it appears that this defendant is not only incorporated under the laws of the United States, but that it is also chartered or licensed to do business under the laws of the States of Louisiana, Arkansas and Texas, and the answer admits that it is "located in those States as well as in the State of New York." Can a corporation be located in more than one State? In the *Rosenbaum Case* (*supra*) the court said that if the corporation was located in Boston, it certainly had no location in New York. In the case of *McLanahan* v. *Mott* (73 Hun, 131), where the corporation was created by an act of Congress for the purpose of constructing a bridge over the Hudson river, the court said: "But this corporation is located in two States, and, therefore, possibly it may not come under the designation of a domestic corporation. We do not decide that point." However, in 10 Cyc. 170, the "doctrine that a corporation can have but one domicile" is characterized as "somewhat musty." The better view seems to be that a corporation may have many locations, even if it

has but one principal place of business.  In *Maisch* v. *City of New York* (193 N. Y. 460) the court had under consideration the residence of the corporation the city of New York, so far as residence controls the jurisdiction of County Courts.  The city of course has its property and its officials and employees located in each of the counties within the city and its departmental heads and the employees, much as in the case of this railroad, there handle the practical operations of the city government.  The court in the *Maisch* case said, through VANN, J.: " While we do not usually speak of a city as carrying on business, any more than a charitable corporation, still it does carry on the important business of government, and its principal place of business within the meaning of the statute under consideration is that place where its chief governmental functions are exercised.  It was held of a city in Ohio, located in two counties, that its ' principal office or place of business ' was in the county ' where its principal seat of municipal government is located ' (*City of Fostoria* v. *Fox*, 60 Ohio St. 340)."

While this case emphasizes the importance of the principal office in determining domicile, it distinctly recognizes by its citation of the Ohio case that a corporation may be located in more than one place.  There was further and distinct recognition of the soundness of this conclusion in *Matter of Cushing* (40 Misc. Rep. 505), where Surrogate FITZGERALD said that " a corporation created and organized under Federal law is a domestic corporation in each State in which it transacts business."  The fact that the defendant has taken out a charter or license in the States of Louisiana, Arkansas and Texas, and is admittedly located in each of those States, militates in no respect against its being located also in the State of New York.  Being located in the State of New York, and being undeniably, as has been held by the Supreme Court of the United States (*Bankers Trust Co.* v. *Texas & Pacific Ry.*, 241 U. S. 295, 309, 310), a corporation created by and existing under the laws of the United States, the defendant, for all purposes of procedure, is a domestic corporation.

It is urged that as the purpose of an attachment is not to bring the defendant into court, but is to secure the plaintiff a lien upon the defendant's property in order to secure the payment of

any judgment which the plaintiff may recover, subdivision 18 of section 3343 of the Code should not be construed so as to narrow the remedy. But it seems reasonably clear that the very purpose of the section was to narrow the remedy, for previously it was such common practice to attach the property of national banks located in the State in suits by residents of the State that it was deemed expedient to grant relief and narrow the remedy. The construction put upon the section is, therefore, in accord with the intention of the Legislature. It is further in accord with sound State policy in offering inducements to Federal corporations to locate their principal offices in this State.

Accordingly, it is held, in respect to a corporation organized under the laws of the United States, whose charter makes no provision for the location of its main office: (1) That its main office is located at the seat of the corporation's government, *i. e.*, at the regular meeting place of the board of directors; (2) that a corporation is located in the State of New York if its principal office or main office is there located; (3) that irrespective of what constitutes the main office, a corporation which holds its stockholders' and directors' meetings, maintains its executive offices and keeps its stock certificate books and corporate records all in the State of New York, is located in the State within the meaning of subdivision 18 of section 3343 of the Code of Civil Procedure.

Motion to vacate the attachment is granted, with ten dollars costs.