# BANKERS TRUST COMPANY *v.* TEXAS AND PACIFIC RAILWAY COMPANY.

### APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF TEXAS.

No. 889. Argued April 12, 13, 1916.—Decided May 22, 1916.

In a suit brought by a corporation existing under the laws of New York and therefore a citizen of that State, against the Texas & Pacific Railway Company, incorporated and existing under an act of Congress and certain supplemental and amendatory acts, *held* that:

The provision in § 1 of the act of 1871 under which the Texas & Pacific

Railway was incorporated, that such company may sue and be sued in all courts of law and equity within the United States, was not intended to confer jurisdiction upon any particular court, but merely to render the company capable of suing and being sued in any court whose jurisdiction as otherwise competently defined was adequate to the occasion.

It is reasonable to presume that if Congress has the purpose to take a class of suits out of usual jurisdictional restrictions relating thereto, it will make its purpose plain.

Under the Constitution, Congress possesses power to invest subordinate Federal courts with original jurisdiction of suits at law or equity arising under the Constitution, laws or treaties of the United States and this power has been exercised at various times. Such jurisdiction has by § 24, Judicial Code, been given to and is now vested in, the District Courts subject to a restriction as to the amount in controversy.

A corporation chartered by an act of Congress is not only a creature of that law, but all its rights are dependent thereon and a suit by or against such a corporation is one arising under a law of the United States.

Section 5 of the act of January 28, 1915, c. 22, 38 Stat. 583, providing that no court of the United States shall have jurisdiction of any suit by or against any railroad company on the ground that it was incorporated under an act of Congress, is amendatory of the Judicial Code and renders the fact of incorporation under an act of Congress a negligible factor in determining whether a suit by or against a railroad company is one arising under a law of the United States so as to give the District Court jurisdiction thereof.

A corporation, such as the Texas & Pacific Railway Company, incorporated under acts of Congress, and whose activities and operations are not by its charter confined to any State, but are intended to be, and are, carried on in different States, is not a citizen of a State within the meaning of the jurisdictional statute.

While such a corporation is a citizen of the United States in the sense that a corporation organized under the law of a State is a citizen of that State, it is not within the declaration of the Fourteenth Amendment that native born and naturalized citizens of the United States are citizens of the State in which they reside.

Congress has not clothed railroad corporations organized under acts of Congress with state citizenship for jurisdictional purposes as it has done in respect to National banks.

A suit by a citizen of a State against a railroad corporation organized

and existing under an act of Congress is not a suit between citizens of different States of which the District Court has jurisdiction under § 24, Judicial Code, as amended by the act of January 28, 1915.

THE facts, which involve the jurisdiction of the District Court of a suit against a corporation incorporated by a statute of the United States, are stated in the opinion.

*Mr. Maurice E. Locke,* with whom *Mr. William W. Green* was on the brief, for appellant:

Jurisdiction to hear and determine such suits as this against the Texas and Pacific Railway Company was expressly vested in the appropriate Federal courts by the act of Congress incorporating said company. Act of March 3, 1871, c. 122, § 1, 16 Stat. 573; Act of May 2, 1872, c. 132, § 1, 17 Stat. 59; *Smith* v. *Un. Pac. R. R.,* 2 Dillon, 278; *Bauman* v. *Un. Pac. R. R.,* 3 Dillon, 367; *Pac. R. R. Removal Cases,* 115 U. S. 1, 24; *Matter of Dunn,* 212 U. S. 374, 384; *Osborn* v. *Bank,* 9 Wheat. 738; *Magill* v. *Parsons,* 4 Connecticut, 317, 336.

The jurisdiction of this case expressly conferred by the act of March 3, 1871, has not been taken away by the act of January 28, 1915. Cases *supra* and *Magee* v. *Un. Pac. R. R.,* 2 Sawyer, 447; *Un. Pac. R. R.* v. *McComb,* 1 Fed. Rep. 799; *Tex. & Pac. Ry.* v. *McAllister,* 59 Texas, 349; *Myers* v. *Un. Pac. Ry.,* 16 Fed. Rep. 292; *Leather Manufacturers' Bank* v. *Cooper,* 120 U. S. 778; *Petri* v. *Commercial Nat. Bank,* 142 U. S. 644; *Butler* v. *National Home,* 144 U. S. 64; *Wash. & Idaho R. R.* v. *Coeur d'Alene Ry.,* 160 U. S. 77; *Tex. & Pac. Ry.* v. *Cody,* 166 U. S. 606; *Continental Nat. Bank* v. *Buford,* 191 U. S. 119; *Tex. & Pac. Ry.* v. *Archibald,* 170 U. S. 665; *Tex. & Pac. Ry.* v. *Barrett,* 166 U. S. 617; *Tex. & Pac. Ry.* v. *Behymer,* 189 U. S. 468; *Charnock* v. *Tex. & Pac. Ry.,* 194 U. S. 432; *Tex. & Pac. Ry.* v. *Dashiell,* 198 U. S. 521; *Tex. & Pac. Ry.* v. *Gentry,* 163 U. S. 353; *Tex. & Pac. Ry.* v. *Swearingen,*

196 U. S. 51; *Tex. & Pac. Ry.* v. *Watson,* 190 U. S. 287; *Tex. & Pac. Ry.* v. *Eastin,* 214 U. S. 153; *Tex. & Pac. Ry.* v. *Howell,* 224 U. S. 577; *Tex. & Pac. Ry.* v. *Harvey,* 228 U. S. 319; *Tex. & Pac. Ry.* v. *Stewart,* 228 U. S. 357; *Tex. & Pac. Ry.* v. *Rosborough,* 235 U. S. 429; *Tex. & Pac. Ry.* v. *Hill,* 237 U. S. 208; *Tex. & Pac. Ry.* v. *Bigger,* 239 U. S. 330.

As to construction of the statute, see Dwarris (2d ed.), 532; Sedgwick (2d ed.), 97; Maxwell on Interp. Stat. (5th ed.), 131, 285, 291; Beal's Rules of Legal Interp. (2d ed.), 463; Endlich on Interp., §§ 223, 228–9; 1 Sutherland on Stat. (2d ed.), §§ 274–5; Black on Interp. (2d ed.), 328; Broom's Legal Max. (8th ed.), 19; *Ex parte Crow Dog,* 109 U. S. 556; *Rodgers* v. *United States,* 185 U. S. 83; *United States* v. *Nix,* 189 U. S. 199.

The history of the passage of § 5 of the act of January 28, 1915, shows that Congress intended to take away from the Federal courts only their jurisdiction of the litigations of railroad companies resting upon the ground that such companies were incorporated under act of Congress, or in other words only such jurisdiction as was dependent upon the existence of a constructive Federal question arising from the mere fact of Federal incorporation.

For the purpose of ascertaining the intent of Congress it is proper to consider the development of the act itself, the reports of committees relative thereto, and other similarly definite and reliable indicia. *Holy Trinity Church* v. *United States,* 143 U. S. 457; *Binns* v. *United States,* 194 U. S. 486; *United States* v. *Nakashima,* 87 C. C. A. 646, 160 Fed. Rep. 842; *Symonds* v. *St. Louis & S. E. Ry.,* 192 Fed. Rep. 335–6, 353.

It also is proper in interpreting a statute to consider the environment, the history of the times, and the particular evil which was pressing upon the attention of Congress, and for which it was seeking a remedy. For this purpose

the court may avail itself of all accessible sources of information, including the proceedings and debates in Congress.   Cases *supra* and *Standard Oil Co.* v. *United States,* 221 U. S. 1, 50; *United States* v. *Un. Pacific R. R.,* 91 U. S. 72, 79; *Taylor* v. *United States,* 152 Fed. Rep. 1; 52 Cong. Rec. 282, 283, 1544.

There is jurisdiction by reason of the Federal questions which exist and give rise to Federal jurisdiction, unless Federal jurisdiction has been taken away by the act of 1915 which has not been the case.

A suit to enforce a railroad mortgage given by a federally chartered company necessarily involves one or more Federal questions that are not merely constructive in their character.

A railroad company has only such power to mortgage its property essential to the performance of its public duties as its charter and other governing laws confer expressly or by necessary implication.   Jones on Corporate Bonds, §§ 1–4; Baldwin on American R. R. Law, 463; *Commonwealth* v. *Smith,* 10 Allen, 448.

That this is a suit to enforce a railway mortgage is either shown by express averment or judicially noticed by the court and is an essential element of the plaintiff's bill. *Frye* v. *Bank of Illinois,* 5 Gilman (10 Ill.), 322; *Inter. & Great North. R. R.* v. *Underwood,* 67 Texas, 589; *East Line Ry.* v. *Rushing,* 69 Texas, 307.

A question determinable by the interpretation and application of an act of Congress is a Federal question. *Ames* v. *Kansas,* 111 U. S. 449; *Howard* v. *United States,* 184 U. S. 676; *Cummings* v. *Chicago,* 188 U. S. 410; *Male* v. *Atchison, T. & S. F. Ry.,* 240 U. S. 97; *Oregon* v. *Three Sisters Irrigation Co.,* 158 Fed. Rep. 346; *Bowers* v. *First National Bank,* 190 Fed. Rep. 676; *McGoon* v. *Nor. Pac. Ry.,* 204 Fed. Rep. 998.

The act of January 28, 1915, does not deprive the Federal courts of their jurisdiction of this case arising out of

the Federal questions therein involved. *Leather Manufacturers' Bank* v. *Cooper*, 120 U. S. 778; *Petri* v. *Commercial Nat. Bank*, 142 U. S. 644; *Continental Nat. Bank* v. *Buford*, 191 U. S. 119; *Bowers* v. *First Nat. Bank*, 190 Fed. Rep. 676; *Walker* v. *Windsor Nat. Bank*, 5 C. C. A. 421, 56 Fed. Rep. 76; *Huff* v. *Union Nat. Bank*, 173 Fed. Rep. 333.

The validity and effect of the various provisions of the mortgage must be determined with reference to the acts of 1873 and 1874, which are not acts of incorporation.

The court has jurisdiction of this cause on the ground of diversity of citizenship, which is sufficiently shown by the record. The absence of a direct averment that it is a citizen of Texas is immaterial, since all the facts are alleged from which citizenship appears as the necessary legal intendment. *Sun Printing Assn.* v. *Edwards*, 194 U. S. 377; *Marshall* v. *Balt. & Ohio R. R.*, 16 How. 314; *Balt. & Ohio S. W. R. R.* v. *Davis*, 149 Fed. Rep. 191; *Mathieson Works* v. *Mathieson*, 150 Fed. Rep. 241.

The facts above stated with reference to the defendant The Texas and Pacific Railway Company constitute it a citizen of Texas for purposes of jurisdiction of the Federal courts in this cause. *Bank of United States* v. *Deveaux*, 5 Cranch, 61; *Railroad* v. *Letson*, 2 How. 497; *Covington Drawbridge Co.* v. *Shepherd*, 20 How. 227; *Shaw* v. *Quincy Mining Co.*, 145 U. S. 444; *St. Louis National Bank* v. *Allen*, 5 Fed. Rep. 551; *Manufacturers National Bank* v. *Baack*, 8 Blatchf. 137; *Orange Nat. Bank* v. *Traver*, 7 Fed. Rep. 146; *National Park Bank* v. *Nichols*, 17 Fed. Cas. 1224; *Main* v. *Second Nat. Bank*, 16 Fed. Cas. 509; *Union Pacific Ry.* v. *Harris*, 158 U. S. 326; *North. Pac. R. R.* v. *Amato*, 144 U. S. 465.

A citizen of the United States, residing in any State of the Union, is a citizen of that State. *Gassies* v. *Ballon*, 6 Pet. 761.

A corporation may, for the purposes of suit, be said to

be born where by law it is created and organized. *Railroad* v. *Koontz*, 104 U. S. 5; *Matter of Dunn*, 212 U. S. 374.

As it is a citizen of the United States and a resident of Texas, defendant is a citizen of Texas for jurisdictional purposes in this cause.

The act of January 28, 1915, does not deprive the Federal courts of their jurisdiction of this case arising out of diversity of citizenship.

*Mr. George Thompson* and *Mr. Henry C. Coke*, with whom *Mr. Thomas J. Freeman, Mr. Arthur J. Shores* and *Mr. Alexander S. Coke* were on the brief, for appellees.

*Mr. Winslow S. Pierce* and *Mr. Lawrence Greer* filed a brief for appellees as counsel for the Protective Committee of Stockholders of the Texas & Pacific Railway Company.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

This is a suit to foreclose a railroad mortgage and for other incidental relief. It was brought in the District Court for the Northern District of Texas December 27, 1915, was dismissed by that court for want of jurisdiction and is here upon a direct appeal under § 238 of the Judicial Code.

The bill alleges that the plaintiff, the trustee under the mortgage, is a New York corporation and "a citizen of said State"; that the Texas and Pacific Railway Company, one of the defendants, is a corporation created and existing under the laws of the United States, has its principal place of business and its principal operating and general offices in the Northern District of Texas, and "is a resident and inhabitant" of that district; that the New Orleans Pacific Railway Company, the other de-

fendant, is a Louisiana corporation and "a citizen of said State"; that one of the acts of Congress under which the Texas and Pacific Railway Company was created and now exists (act March 3, 1871, c. 122, § 1, 16 Stat. 573) provides that such company "by that name . . . shall be able to sue and be sued, plead and be impleaded, defend and be defended, in all courts of law and equity within the United States"; that under that act and designated amendatory and supplemental acts of Congress (May 2, 1872, c. 132, 17 Stat. 59; March 3, 1873, c. 257, 17 Stat. 598; June 22, 1874, c. 406, 18 Stat. 197) said company came to own and hold on February 1, 1888, certain railroad properties and interests in Texas and Louisiana; that on that date said company, "acting in pursuance of due authority conferred upon it by said acts of Congress", the relevant portions of which are copied into the bill, and the New Orleans Pacific Railway Company, acting in pursuance of authority conferred upon it by the laws of Louisiana, executed and delivered the mortgage in suit covering these railroad properties and interests, a substantial part of which is situate in the Northern District of Texas; that the mortgage was duly filed and recorded in the Department of the Interior pursuant to such acts of Congress; that the mortgagors have defaulted in the performance of the terms and conditions of the mortgage, and that the suit involves the requisite jurisdictional amount and "arises under the Constitution and laws of the United States."

By a motion to dismiss the Texas and Pacific Railway Company challenged the jurisdiction of the District Court upon the grounds that the act of January 28, 1915, c. 22, § 5, 38 Stat. 803, provides: "No court of the United States shall have jurisdiction of any action or suit by or against any railroad company upon the ground that said railroad company was incorporated under an act of Congress;" and that apart from the Texas and Pacific Rail-

way Company's incorporation under congressional enactments the suit is not one arising under the Constitution or any law of the United States, and is not one between citizens of different States. The motion was sustained and the bill was dismissed as to both defendants.

The plaintiff insists that in refusing to entertain the suit the District Court erred because (1) the provision before quoted from § 1 of the act of March 3, 1871, enables the Texas and Pacific Railway Company to sue and be sued in any court of law or equity within the United States; (2) the bill shows that the suit is one arising under the laws of the United States apart from the incorporation of the Texas and Pacific Railway Company under acts of Congress, and therefore the act of January 28, 1915, is not controlling, and (3) the bill shows that the suit is between citizens of different States.

1. Upon reading § 1 of the act of 1871 it is plain that the words "by that name . . . shall be able to sue and be sued, plead and be impleaded, defend and be defended, in all courts of law and equity within the United States" were not intended in themselves to confer jurisdiction upon any court. As the context shows, Congress was not then concerned with the jurisdiction of courts but with the faculties and powers of the corporation which it was creating; and evidently all that was intended was to render this corporation capable of suing and being sued by its corporate name in any court of law or equity— Federal, state or territorial—whose jurisdiction as otherwise competently defined was adequate to the occasion. Had there been a purpose to take suits by and against the corporation out of the usual jurisdictional restrictions relating to the nature of the suit, the amount in controversy and the venue, it seems reasonable to believe that Congress would have expressed that purpose in altogether different words. The case of *Bank of the United States* v. *Deveaux*, 5 Cranch, 61, 85, is well in point. A

provision in the act incorporating the bank, c. 10, § 3, 1 Stat. 191, much like that here relied upon, was invoked as in itself entitling the bank to sue in a Circuit Court of the United States, but that view was rejected in an opinion by Chief Justice Marshall, wherein it was said:

"That act creates the corporation, gives it capacity to make contracts and to acquire property, and enables it 'to sue and be sued, plead and be impleaded, answer and be answered, defend and be defended, in courts of record, or any other place whatsoever.' This power, if not incident to a corporation, is conferred by every incorporating act, and is not understood to enlarge the jurisdiction of any particular court, but to give a capacity to the corporation to appear, as a corporation, in any court which would, by law, have cognizance of the same, if brought by individuals. If jurisdiction is given by this clause to the Federal courts, it is equally given to all courts having original jurisdiction, and for all sums however small they may be."

Afterwards, when the second bank of the United States was established, a provision was inserted in the incorporating act, c. 44, § 7, 3 Stat. 266, enabling the bank to sue and be sued "in all state courts having competent jurisdiction, and in any Circuit Court of the United States," and in *Osborn* v. *Bank of the United States*, 9 Wheat. 738, it was held (pp. 816–818) that this provision, unlike that in the prior act, amounted to an express grant of jurisdiction to the Circuit Courts and (pp. 823, *et seq.*) was within the power of Congress under the Constitution. It was in the light of these differing precedents in legislation and of the resulting difference in their interpretation that Congress framed the act of 1871. While that act does not literally follow either precedent, its words have the same generality and natural import as did those in the earlier bank act, and this strengthens the conclusion that Congress intended thereby to give to the Texas and

Pacific Railway Company only a general capacity to sue and be sued in courts of law and equity whose jurisdiction as otherwise defined was appropriate to the occasion, and not to establish an exceptional or privileged jurisdiction.

2. Under the Constitution Congress undoubtedly possesses power to invest the subordinate Federal courts with original jurisdiction of all suits at law or in equity arising under the Constitution, laws or treaties of the United States, and, if the act of February 13, 1801, c. 4, § 11, 2 Stat. 89, be not noticed because of its early repeal, c. 8, § 1, 2 Stat. 132, it is true, as sometimes has been said,[1] that this power was broadly exercised for the first time by the act of March 3, 1875, c. 137, § 1, 18 Stat. 470. By that act Congress in express terms gave the Circuit Courts original jurisdiction, concurrent with the courts of the several States, of all suits of that nature, where the value of the matter in dispute, exclusive of costs, was in excess of five hundred dollars, and this jurisdiction remained with the Circuit Courts until January 1, 1912, when they were abolished, save as the act of March 3, 1887, c. 373, § 1, 24 Stat. 552, required that the value of the matter in dispute, exclusive of interest and costs, be in excess of two thousand dollars. Upon the discontinuance of the Circuit Courts this jurisdiction was transferred to the District Courts by § 24 of the Judicial Code, subject to a restriction that thereafter the value of the matter in controversy should exceed three thousand dollars, exclusive of interest and costs.

As long ago as *Osborn* v. *Bank of the United States, supra,* it was settled that a suit by or against a corporation chartered by an act of Congress is one arising under a law of the United States, and this because, as was said in that case, pp. 823, 825: "The charter of incorporation

---

[1] Tennessee *v.* Union and Planters' Bank, 152 U. S. 454, 459; Continental National Bank *v.* Buford, 191 U. S. 119, 122.

not only creates it [the corporation], but gives it every faculty which it possesses. The power to acquire rights of any description, to transact business of any description, to make contracts of any description, to sue on those contracts, is given and measured by its charter, and that charter is a law of the United States. This being can acquire no right, make no contract, bring no suit, which is not authorized by a law of the United States. It is not only itself the mere creature of a law, but all its actions and all its rights are dependent on the same law. Can a being, thus constituted, have a case which does not arise literally, as well as substantially, under the law? Take the case of a contract, which is put as the strongest against the bank. . . . The act of Congress is its foundation. The contract could never have been made, but under the authority of that act. The act itself is the first ingredient in the case, is its origin, is that from which every other part arises. That other questions may also arise, as the execution of the contract, or its performance, cannot change the case, or give it any other origin than the charter of incorporation. The action still originates in, and is sustained by, that charter."

After the act of March 3, 1875, extended the jurisdiction of the Circuit Courts to cases arising under the laws of the United States, the ruling just quoted was uniformly followed and applied in suits by and against Federal corporations (*Pacific Railroad Removal Cases*, 115 U. S. 1; *Petri* v. *Commercial National Bank*, 142 U. S. 644, 648; *Butler* v. *National Home*, 144 U. S. 64; *Northern Pacific R. R.* v. *Amato*, 144 U. S. 465, 471; *Texas & Pacific Ry.* v. *Cox*, 145 U. S. 593, 601; *Washington & Idaho R. R.* v. *Coeur d'Alene Ry.*, 160 U. S. 77, 93; *Knights of Pythias* v. *Kalinski*, 163 U. S. 289, 290; *Texas & Pacific Ry.* v. *Swearingen*, 196 U. S. 51, 53; *Matter of Dunn*, 212 U. S. 374, 383–384), save where the particular suit was withdrawn or excluded from that jurisdiction by some specific enact-

ment, like that of July 12, 1882, c. 290, § 4, 22 Stat. 162, placing most of the suits by and against national banks in the same category with suits by and against banks not organized under the laws of the United States. *Leather Manufacturers' National Bank* v. *Cooper,* 120 U. S. 778, 781; *Continental National Bank* v. *Buford,* 191 U. S. 119, 122.

It results that if the general jurisdictional provision, now embodied in § 24 of the Judicial Code, respecting suits arising under the laws of the United States were alone to be considered, it would have to be held that the District Court had jurisdiction of the present suit as one falling within that class by reason of the incorporation of the Texas and Pacific Railway Company under a law of the United States. But § 5 of the act of January 28, 1915, must also be considered. It is a later enactment, is shown by the title to be amendatory of the Judicial Code, and, as has been seen, declares that "no court of the United States shall have jurisdiction of any action or suit by or against any railroad company upon the ground that said railroad company was incorporated under an act of Congress." These are direct and comprehensive words and, when read in the light of the settled course of decision just mentioned, must be taken as requiring that a suit by or against a railroad company incorporated under an act of Congress be not regarded, for jurisdictional purposes, as arising under the laws of the United States, unless there be some adequate ground for so regarding it other than that the company was thus incorporated. Plainly, there was a purpose to effect a real change in the jurisdiction of such suits. Counsel for plaintiff concede that this is so. But they urge that all that is intended is to eliminate the mere creation of a railroad corporation under an act of Congress as a ground for regarding the suit as arising under the laws of the United States. In this there is an evident misapprehension of what constitutes incorporation, as

also of the real basis of the jurisdiction affected. A corporation is never merely created. Being artificial, possessing no faculties or powers save such as are conferred by law, and having in legal contemplation no existence apart from them, its incorporation consists in giving it individuality and endowing it with the faculties and powers which it is to possess. It is upon this theory that the decisions have proceeded. The ruling has been that a suit by or against a Federal corporation arises under the laws of the United States, not merely because the corporation owes its creation to an act of Congress, but because it derives all of its capacities, faculties and powers from the same source. This is shown in the quotation before made from *Osborn* v. *Bank of the United States, supra,* and also in the following excerpt from *Shoshone Mining Co.* v. *Rutter,* 177 U. S. 505, 509–510: "A corporation has no powers and can incur no obligations except as authorized or provided for in its charter. Its power to do any act which it assumes to do, and its liability to any obligation which is sought to be cast upon it, depend upon its charter, and when such charter is given by one of the laws of the United States there is the primary question of the extent and meaning of that law. In other words, as to every act or obligation the first question is whether that act or obligation is within the scope of the law of Congress, and that being the matter which must be first determined a suit by or against the corporation is one which involves a construction of the terms of its charter; in other words, a question arising under a law of Congress." And so, when due regard is had for the terms of the amendatory section of 1915 and for the real basis of the jurisdiction affected, the conclusion is unavoidable that what is intended is to make the fact that a railroad company is incorporated under an act of Congress, that is to say, derives its existence, faculties and powers from such an act, an entirely negligible factor in determining whether a suit by or

against the company is one arising under the laws of the United States.

Upon examining the bill in the present suit, it is certain that it does not arise under those laws apart from the incorporation of the Texas and Pacific company under acts of Congress. We say "acts." of Congress, because the original act was amended and supplemented by three others, and the four constitute the company's charter. Portions thereof are copied into the bill as showing that the mortgage sought to be enforced was given under a power conferred by Congress, but this does not help the jurisdiction. As, under the amendatory section, the fact that the company derives its existence and all of its faculties and powers from a Federal charter cannot avail to give jurisdiction, it is obvious that to dwell upon the fact that any particular power comes from the common source must be equally unavailing.

The case of *Male v. Atchison, Topeka & Santa Fe Ry.*, 240 U. S. 97, does not make for a different conclusion, because it was not a suit by or against a railroad company incorporated under an act of Congress, and because it arose and was pending in this court prior to the amendatory act of 1915 and by § 6 of that act was excepted from its provisions.

3. Whether this is a suit between citizens of different States turns upon whether the Texas and Pacific Company is a citizen of Texas. It is doubtful that the pleader intended to state a case of diverse citizenship, but, be this as it may, we are of opinion that the company is not a citizen of any State. It was incorporated under acts of Congress, not under state laws; and its activities and operations were not to be confined to a single State, but to be carried on, as in fact they are, in different States. Of course it is a citizen of the United States in the sense that a corporation organized under the laws of one of the States is a citizen of that State, but it is not within the

clause of the Fourteenth Amendment which declares that native born and naturalized citizens of the United States shall be citizens of the State wherein they reside. Nor has Congress said that it shall be regarded as possessing state citizenship for jurisdictional purposes, as is done in respect of national banks by § 24, par. 16, of the Judicial Code. In short, there is no ground upon which the company can be deemed a citizen of Texas, and this being so, the suit is not one between citizens of different States.

*Decree affirmed.*