**BLEVINS v. HINES, Director General of Railroads, et al.**

(District Court, W. D. Virginia.   May 8, 1920.)

1. **Railroads ⊜⇒5½, New, vol. 6A Key-No. Series—Carrier under federal control not proper party to suit against Director General.**

   Under Federal Railway Control Act, § 8 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115¾h), authorizing the President to execute the powers thereby conferred through such agencies as he may determine, the presidential proclamation of January 10, 1919, appointing a Director General of Railroads, with authority to make all necessary orders, and General Order 50a of the Director General, requiring that actions for injuries from negligence of employés shall be brought against the Director General, and not otherwise, the provision of section 10 of the act (section 3115¾j) that actions shall be brought against the carrier is abrogated and the carrier is not a proper party, as this provision was to be effective only if not inconsistent with any order of the President.

2. **Railroads ⊜⇒5½, New, vol. 6A Key-No. Series—Director General, not individual, named defendant.**

   General Order No. 50a of the Director General of Railroads, providing that certain actions "shall be brought against the Director General of Railroads and not otherwise," requires that the defendant shall be the official, and not the individual who happens to be in office at the time; but the insertion of the Director General's name is harmless surplusage.

3. **Courts ⊜⇒309—Diverse citizenship between plaintiff and Director General of Railroads does not give federal jurisdiction.**

   Under General Order No. 50a of the Director General of Railroads, diverse citizenship between the Director General and the plaintiff in an action against him does not give jurisdiction to a federal court, as under such order it is not the individual holding the office of Director General, but an artificial being without citizenship, that is the defendant.

4. **Courts ⊜⇒314—Citizenship of railroad company not controlling in action against Director General of Railroads.**

   Under General Order No. 50a of the Director General of Railroads, requiring certain actions to be brought against the Director General and not otherwise, the citizenship of the railroad company out of the operation of whose road an action arises is not controlling on the question of federal jurisdiction of actions against the Director General.

5. **Courts ⊜⇒296—Action against Director General of Railroads is action "arising under law of United States."**

   An action against the Director General of Railroads for the negligence of his employés in the operation of a train is within the jurisdiction of a federal court as a case "arising under a law of the United States."

   [Ed. Note.—For other definitions, see Words and Phrases, Second Series, Arise; Arising.]

At Law.   Action by one Blevins against Walker D. Hines, Director General of Railroads, and the Norfolk & Western Railway Company.   On motion by the Railroad Company for dismissal as to it and on question of jurisdiction.   Motion granted, and jurisdiction sustained.

Werth & Werth, of Tazewell, Va., for plaintiff.

Smith & Funkhouser and Staples, Cocke & Hazlegrove, all of Roanoke, Va., for defendants.

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

McDOWELL, District Judge. This action was originally instituted in this court on the 26th day of February, 1919, against "Walker D. Hines, Director General of Railroads, and the Norfolk & Western Railway Company," for a cause of action arising after the Norfolk & Western Railway had been taken under federal control.

(1) Dismissal as to Norfolk & Western Railway Company.

[1] On motion of the railway company it was "dropped." 2 Code Va. 1919, § 6102. I find nothing in the Federal Railway Control Act (40 Stat. 451, 456), or in any order made by authority of the President, which authorizes or contemplates a joint action against the Director General and the carrier for a tort alleged to have been committed by the employés of the Director General. On common-law principles it goes without saying that the carrier is not in the least degree responsible for the injury, has no interest in the controversy, and hence is not properly joined as a defendant. It is true that the plan of section 10 of the Control Act was that actions for causes of action arising under federal control should be brought against the carrier, which was to have been the sole (but nominal) defendant. But this plan was to be effective only if not inconsistent with any order of the President. By proclamation of January 10, 1919 (40 Stat. 1922), Walker D. Hines was by the President appointed Director General of Railroads and given authority "to issue any and all orders which may in any way be found necessary and expedient * * * as fully * * * as the President is authorized to do. * * *" By section 8 of the Control Act the President was authorized to "execute any of the powers herein and heretofore granted him * * * through such agencies as he may determine. * * *" On January 11, 1919, Hines, Director General, issued General Order 50a, which requires that actions such as the present one "shall be brought against the Director General of Railroads and not otherwise." Clearly the statute authorized this order and the order provides that the Director General shall be the sole defendant; and this plan is so entirely inconsistent with the plan set out in section 10 of the Control Act that the latter is necessarily abrogated.

[2] Because of its bearing on the next topic to be discussed, it should also be said that the intent of General Order 50a is that the defendant shall be the official, and not the individual, who happens to be in office at the time of suit. General Order 50 read: " * * * Shall be brought against Wm. G. McAdoo, Director General of Railroads, and not otherwise." The language of General Order 50a is: " * * * Shall be brought against the Director General of Railroads, and not otherwise." It seems clear that the intent was that actions should be brought only against "the Director General of Railroads." However, the insertion of the name of Walker D. Hines in the declaration and process here may be treated as harmless surplusage.

The conclusion to dismiss as to the Norfolk & Western Railway Company seems to be sustained by Rutherford v. Union Pac. R. Co. (D. C.) 254 Fed. 880; Dahn v. McAdoo (D. C.) 256 Fed. 549, 550;

Haubert v. Baltimore & O. R. Co. (D. C.) 259 Fed. 361; Nash v. Southern Pac. Co. (D. C.) 260 Fed. 280.

## (2) Federal Jurisdiction.

[3] The cause of action is the alleged negligence of certain employés of the Director General in the operation of a train in August, 1918, resulting in the injury and subsequent death of one who was as is alleged a licensee on the track. The plaintiff is a citizen of Virginia, and the Norfolk & Western Railway Company is a Virginia corporation. Nothing was alleged or proved as to the citizenship of Walker D. Hines, and it remains unknown. Manifestly there is here no federal jurisdiction on the ground of diversity of citizenship; and even if there had been allegation and evidence showing Mr. Hines, the individual, to be a citizen of some state other than Virginia, I would still think his citizenship of no significance, and insufficient to give federal jurisdiction. If I construe General Order 50a correctly, the individual who happens to be the Director General is not the defendant, and is not even to be named in the declaration. The action is not one against a person; it is against an artificial being that has no citizenship. See Bankers' Trust Co. v. Tex. & Pac. Ry., 241 U. S. 295, 306, 36 Sup. Ct. 569, 60 L. Ed. 1010.

[4] Not only was the plan (section 10 of the Control Act) of suing the carrier for torts committed by the employés of the Director General abrogated by General Order 50 (and 50a), but it seems clear from the wording of the Control Act that the scheme of the General Orders referred to was never thought of in drafting the act. The statute was enacted March 21, 1918; General Order 50 was made October 28, 1918. The theory of General Order 50 is a happy and lawyerlike method of abolishing a crude anomaly. The statute relates only to actions by or against carriers; it does not in any way relate to actions by or against the Director General; and, as such actions were not thought of, it is obvious that the statute cannot properly be construed as making provisions as to the jurisdiction of actions by or against the Director General. If the original plan had been left in force, the action here would have been against the Norfolk & Western Railway Company alone; and in such event it may well be that there would have been no federal jurisdiction of the action. But the General Orders, with full statutory authority, totally changed the situation. The carrier is not suable, and it has no interest in or connection with the action. The citizenship of the carrier is of no interest or significance, for that has nothing whatever to do with the jurisdiction of an action against the Director General.

No matter how clear the implication of section 10 that the citizenship of the carrier might control the question of federal jurisdiction of actions by or against a carrier, there is in the statute no possibility of any implication of intent in regard to actions by or against the Director General; for such actions were not contemplated. Every word in section 10 relates to one definite and complete scheme or plan of procedure. However anomalous and unheard of this plan was, it

could have been carried out and was complete. If it is ever possible to learn from the words of a statute what was not in the minds of the lawmakers, section 10 of the Control Act seems to afford this opportunity. I can think of no reason for assuming that one devising a complete and practical scheme of procedure should be at the same moment making provisions concerning another and totally different (but equally complete) scheme. The only satisfactory conclusion I can reach is that the matter of the jurisdiction of an action against the Director General is not within the purview of the Control Act, and therefore no reason for or against the jurisdiction of this court can be found in that statute.

A different conclusion is reached in Smith v. Babcock Co. (D. C.) 260 Fed. 679; but I am unable to accede to the soundness of that opinion. See, also, Johnson v. M'Adoo (D. C.) 257 Fed. 757.

[5] I have found no grant of federal jurisdiction which could include the present action, unless this be a case arising under a law of the United States. It is settled that an action by or against a corporation created by act of Congress is one arising under a law of the United States. Osborn v. United States Bank, 9 Wheat. 738, 822, 6 L. Ed. 204; Pacific Railroad Removal Cases, 115 U. S. 1, 11, 5 Sup. Ct. 1113, 29 L. Ed. 319; Bankers' Trust Co. v. Texas & Pac. Ry., 241 U. S. 295, 306, 36 Sup. Ct. 569, 60 L. Ed. 1010. The analogy between a federal corporation and the Director General is not absolutely perfect, for the former is directly created by act of Congress, and the latter was created by the President under authority of an act of Congress. But the fact remains that the Director General, the officer, is the creature of an act of Congress; and the right of the plaintiff to hold the Director General responsible, to make the Director General the defendant, has its origin in the acts which authorized the President to appoint such officer and to give him power to make orders such as 50a.

If the reasoning of Chief Justice Marshall in Osborn v. Bank, supra, is sound (and no subordinate federal court can permissibly hold otherwise), it seems to follow that the case at bar is one arising under a law of the United States. The officer, the artificial being known as the Director General, like a federal corporation, was created by federal law and derives his every power from federal law. There is also some analogy between an action against the Director General and an action against a receiver of a national bank appointed (section 5234, R. S. [Comp. St. § 9821]) by the Comptroller of the Currency. In Auten v. United States National Bank, 174 U. S. 125, 141, 19 Sup. Ct. 628, 43 L. Ed. 920, an action against such receiver was held to be one arising under a law of the United States. The Director General is as clearly an officer of the United States as is a receiver of a national bank.

Admitting that there is also analogy between a federal court receiver and the Director General, and admitting that an action by or against a federal receiver is not one arising under a law of the United States merely because the receiver was appointed by a federal court (Gableman v. Peoria Ry. Co., 179 U. S. 335, 340, 21 Sup

Ct. 171, 45 L. Ed. 220), still the analogy between the Director General and a federal corporation is closer. When Congress authorized the President to take over the railroads (39 Stat. 645 [Comp. St. § 1974a]) it impliedly authorized him to appoint a Director General. When Congress created the federal trial courts, it impliedly authorized them to appoint receivers. But the power to appoint a Director General came directly from the act of Congress, while the power of the federal courts to appoint receivers comes directly from the inherent powers of courts of equity, and only indirectly and remotely from the act creating the courts.

The only way that occurs to me of avoiding the force of the strong and nearly perfect analogy between this action against the Director General and an action for tort against a federal corporation (Pacific Railroad Removal Cases, supra) is to deny the soundness of Osborn v. Bank, supra. As has been said, this is not permissible. It seems, therefore, necessary to hold that the case at bar is one arising under a law of the United States. See Nueces Valley Co. v. McAdoo (D. C.) 257 Fed. 143, 146. In three recent cases in the Circuit Court of Appeals for this circuit, federal jurisdiction seems to have been assumed without discussion. Hines v. Henaghan (C. C. A.) 265 Fed. 831 (No. 1725); Hines v. Atlantic Refining Co. (C. C. A.) 265 Fed. 839 (No. 1731); Waldron v. Director General (C. C. A.) 266 Fed. —— (No. 1777).

I have read the Act for the Termination of Federal Control, of February 28, 1920. Section 206 is most in point; but it seems to me to throw no light on the point we have in hand. At most it is but a recognition of the jurisdictional difficulties created by the Control Act, and an effort to prevent such difficulties in the future.