**S.G. and A.E., Plaintiffs, Appellants,**

v.

**AMERICAN NATIONAL RED CROSS, Defendant, Appellee.**

**No. 90–1873.**

United States Court of Appeals, First Circuit.

Heard March 4, 1991.

Decided July 24, 1991.

Gilbert Upton with whom Gary B. Richardson and Upton, Sanders & Smith were on brief, Concord, N.H., for plaintiffs, appellants.

Edward L. Wolf, Associate Gen. Counsel, American Nat. Red Cross, with whom Bruce M. Chadwick, Brendan Collins, Arnold & Porter, Washington, D.C., Irvin D. Gordon and Sulloway, Hollis & Soden were on brief, Concord, N.H., for defendant, appellee.

Before CAMPBELL and CYR, Circuit Judges, and COFFIN, Senior Circuit Judge.

LEVIN H. CAMPBELL, Circuit Judge.

This appeal presents the question of whether the language of the congressional charter of the American National Red Cross, 36 U.S.C. § 2, confers original federal jurisdiction over all suits involving the Red Cross. Answering this question affirmatively, the district court denied the plaintiffs' motion to remand the case to state court but certified the question for immediate appellate review pursuant to 28 U.S.C. § 1292(b). Because of the importance of the jurisdictional issue presented, especially in light of the increasing litigation concerning the transmission of the HIV virus through the transfusion of tainted blood, we granted the plaintiff's petition for permission to appeal.

For the reasons set forth below, we hold that Congress's amendment of the Red Cross charter in 1947, as reflected in 36 U.S.C. § 2,[1] did not create original federal

jurisdiction over all suits involving the Red Cross. Therefore, should the district court determine that joinder of the nondiverse parties is appropriate under Fed.R.Civ.P. 20(a), the only remaining basis for federal jurisdiction—diversity of citizenship—will be destroyed, requiring remand to the state court.

## I.

In April 1984, S.G., a resident of Concord, New Hampshire, entered Concord Hospital to undergo a hysterectomy. During the course of the surgery, a blood transfusion was administered. The plaintiffs, S.G. and her husband, allege that a combination of the negligence of the surgeon, the late Dr. Kenneth L. McKinney, in performing the surgery and the malfunction of a surgical stapler manufactured by Auto Suture Company necessitated the blood transfusion. S.G. was transfused with blood supplied by the American Red Cross Blood Services, Vermont–New Hampshire Region, a division of the American National Red Cross. The blood was allegedly contaminated with human immunodeficiency virus (HIV), and S.G. subsequently contracted AIDS.

In April 1988, the plaintiffs filed suit in the Superior Court of Merrimack County against the estate of Dr. McKinney. In August 1988, they filed suit in the same court against Auto Suture Company. Almost two years later, in March 1990, they filed the instant action in the same court against the Red Cross, simultaneously moving to consolidate this action with the other related actions pending in state court. Before the state court ruled on the motion to consolidate, the Red Cross removed the suit to the United States District Court for the District of New Hampshire pursuant to 28 U.S.C. § 1441, alleging original jurisdiction under 36 U.S.C. § 2 (the Red Cross charter), as well as diversity jurisdiction under 28 U.S.C. § 1332.

---

1. 36 U.S.C. § 2 provides, in relevant part:
   [The American National Red Cross] shall have ... the power to sue and be sued in courts of law and equity, State or Federal, within the jurisdiction of the United States....

The plaintiffs subsequently filed a "Motion to Join Parties, Remand and for Other Relief," requesting that the district court remand the case to state court or, alternatively, order that the state court defendants be joined in the action in federal court. The district court denied the plaintiffs' motion to remand, finding that the suit against the Red Cross fell within the exclusive jurisdiction of the federal court. However, pursuant to the plaintiffs' petition for leave to appeal, the district court modified its order so as to certify the matter for appeal pursuant to 28 U.S.C. § 1292(b). This court accepted certification of the interlocutory appeal on September 13, 1990.

## II.

Assuming that the proper joinder of all other defendants in the federal court would destroy complete diversity, the jurisdiction of the federal district court would depend upon whether that court has *original* subject matter jurisdiction over cases involving the Red Cross.[2] That issue depends in turn upon whether a grant of original jurisdiction can be inferred from the language of the amended federal charter of the Red Cross. *See* 36 U.S.C. § 2.

A number of federal district courts have decided the jurisdictional question presented here. About half of these courts have held that the existing "sue and be sued" language in the Red Cross charter confers original federal subject matter jurisdiction, while the remainder have held not.[3] Because a district court's decision to remand a case is not appealable, review by the court of appeals is available only through petition pursuant to 28 U.S.C. § 1292(b). Consequently, only one circuit court has addressed the issue presented here. In *Kaiser v. Memorial Blood Center*, 938

F.2d 90 (8th Cir.1991), the Eighth Circuit held that the "sue and be sued" language in the charter conferred original federal jurisdiction over the Red Cross. For the reasons set forth below, we reach a different conclusion.

### A. *Case Law and the Interpretation of "sue and be sued" Clauses*

Courts that have held that original jurisdiction exists, including the Eighth Circuit, have relied primarily on *Osborn v. Bank of the United States*, 22 U.S. (9 Wheat.) 738, 6 L.Ed. 204 (1824). In *Osborn*, the Supreme Court sustained the authority of an Ohio federal circuit court to entertain a suit brought by the Second Bank of the United States to enjoin the collection of a state tax levied against the bank. Chief Justice Marshall, writing for the Court, located the specific conferral of original federal jurisdiction over the bank's suit in the language of the bank's charter which empowered it "to sue and be sued, plead and be impleaded, answer and be answered, defend and be defended, in all state courts having competent jurisdiction, and in any circuit court of the United States." Because this language—unlike the "sue and be sued" language in the charter of the First Bank of the United States—expressly referred to the federal courts, the Court concluded that the charter provision conferred jurisdiction upon the circuit court. *Osborn*, 22 U.S. at 817. Having determined that the charter conferred jurisdiction, the Court went on to conclude that any case involving the congressionally-chartered Bank was, necessarily, a federal question case and therefore within the Article III "arising under" jurisdiction. In other words, *Osborn* held not only that the charter conferred jurisdiction but that, under the Constitution, Congress had the power to confer

---

**2.** In their brief on appeal, the appellants argue that, even if 36 U.S.C. § 2 confers original federal jurisdiction, the case should be remanded to state court either because the basis for jurisdiction does not appear on the face of a well-pleaded complaint or because principles of abstention require remand. Because we hold that the Red Cross charter did not confer original federal jurisdiction, we need not address these arguments.

**3.** *Compare Rivera Gonzalez v. Commonwealth of Puerto Rico*, 726 F.Supp. 10 (D.P.R.1989); *Anonymous Blood Recipient v. Sinai Hospital*, 692 F.Supp. 730 (E.D.Mich.1988) *with Collins v. American Red Cross*, 724 F.Supp. 353 (E.D.Pa. 1989); *Roche v. American Red Cross*, 680 F.Supp. 449 (D.Mass.1988).

such jurisdiction over cases involving the bank.

Marshall's rationale for concluding that suits involving the bank "arise under" federal law—that the bank's power to "sue and be sued" was created by federal law—led to a great expansion of cases in the federal courts following the enactment of the Judiciary Act of 1875, which established general federal question jurisdiction. *See Pacific Railroad Removal Cases*, 115 U.S. 1, 5 S.Ct. 1113, 29 L.Ed. 319 (1885); Mishkin, "The Federal 'Question' in the District Courts," 53 *Colum.L.Rev.* 157, 160 n. 24 (1953). To shield federal courts from the burden of federal incorporation cases that were of no substantive federal consequence, Congress, in 1925, enacted the predecessor of what is now 28 U.S.C. § 1349: "The district court shall not have jurisdiction of any civil action by or against any corporation upon the ground that it was incorporated by or under an Act of Congress, unless the United States is the owner of more than one-half its capital stock." Thus, to the extent *Osborn* suggested that all suits involving a federally-chartered corporation presented a federal question, 28 U.S.C. § 1349 overruled that aspect of *Osborn*.

The significance of *Osborn*, then, to the Red Cross charter cases, is limited to its focus upon the "sue and be sued" language of the particular charter. In holding that the language of the charter conferred original federal jurisdiction, the *Osborn* Court distinguished *Bank of the United States v. Deveaux*, 9 U.S. (5 Cranch.) 61, 3 L.Ed. 38 (1809). In *Deveaux*, the Court interpreted the national bank's previous charter, which empowered the bank to "sue and be sued ... in courts of record, or any other place whatsoever," as having established only the bank's capacity to litigate. *Osborn*, 22 U.S. at 817. Marshall explained that the *Deveaux* decision "amount[ed] only to a declaration that a general capacity in the bank to sue, without mentioning the courts of this Union, may not give a right to sue in those courts." *Osborn*, 22 U.S. at 818. This raises the question whether the grant of power to "sue and be sued" expressly in a federal court, as well as in a state court,

leads by itself to any different result. We think not. We do not believe that *Osborn*'s holding that the second charter created jurisdiction should be read to confer talismanic significance on a simple reference to federal courts in a congressional charter. On the contrary, *Osborn* must be read in light of subsequent case law and legislation that has both expanded and limited federal jurisdiction in the 166 years since the case was decided.

The Supreme Court revisited the issue of "sue and be sued" clauses in *Banker's Trust Co. v. Texas and Pacific Railway Co.*, 241 U.S. 295, 36 S.Ct. 569, 60 L.Ed. 1010 (1916). In *Banker's Trust*, the Court was faced, as we are here, with a "sue and be sued" clause, the specificity of which fell somewhere between *Osborn* and *Deveaux*. Texas & Pacific Railway's charter enabled it to "to sue and be sued, plead and be impleaded, answer and be answered, defend and be defended, in all courts of law and equity within the United States." 241 U.S. at 301, 36 S.Ct. at 569. The charter made explicit reference to all courts within the United States but, unlike *Osborn*, did not mention a particular federal court (i.e., the circuit court). In *Banker's Trust*, the Supreme Court held that this charter did not expand the jurisdiction of federal courts, explaining that "[h]ad there been a purpose to take suits by and against the corporation out of the usual jurisdictional restrictions relating to the nature of the suit, the amount in controversy and the venue, it seems reasonable to believe that Congress would have expressed that purpose in altogether different words." 241 U.S. at 303, 36 S.Ct. at 570.

The Supreme Court's requirement, in *Banker's Trust*, of clearer language regarding the conferral of federal jurisdiction rested, at least in part, on the 1915 amendment to the Judiciary Act which provided that "no court of the United States shall have jurisdiction of any action or suit by or against any railroad company upon the ground that said railroad company was incorporated under an act of Congress." Act of Jan. 28, 1915, ch. 22, § 5, 38 Stat. 803. The Court's interpretation of the railroad's

charter in light of this amendment is significant to our reading of the Red Cross charter since, as noted, Congress enacted a similar amendment in 1925, 28 U.S.C. § 1349, which applied to *all* federally-chartered corporations. While § 1349 does not preclude an express grant of federal jurisdiction over such a corporation, *Banker's Trust* strongly suggests that a congressional grant of such jurisdiction should not be implied from ambiguous language. *See* 241 U.S. at 303, 36 S.Ct. at 570.

The "sue and be sued" clause of the Red Cross Charter differs, moreover, in significant ways from the "sue and be sued" clause found to confer federal jurisdiction in *Osborn*. The charter in *Osborn* gave the bank the power to "sue and be sued ... in all state courts *having competent jurisdiction*, and in any circuit court in the United States" 22 U.S. at 817 (emphasis supplied). Thus, the language of the bank charter in *Osborn* expressly indicated the Congress was concerned with the jurisdiction of the courts in which the bank could "sue and be sued." Certain state courts would have jurisdiction over the bank, and, in those courts, Congress conferred on the bank the power to "sue and be sued." As to federal courts, Congress excluded the jurisdictional caveat, simultaneously conferring the power to sue and expanding federal jurisdiction to include such suits. Such a conferral was important because, at the time the bank was chartered, the district and circuit courts were not vested with any general federal question jurisdiction. Absent some statutory provision linking federal jurisdiction to a particular litigant or set of issues, federal questions usually did not get into the federal courts except on writs of error to the Supreme Court from the highest courts of the states, *see, e.g., McCulloch v. Maryland,* 4 Wheat. 316, 4 L.Ed. 579 (1819), or in the context of a suit between citizens of different states. Thus, at that time, a conferral of the power to sue in a federal court, without some corresponding grant of original federal jurisdiction, would have had relatively narrow application.

The Red Cross charter, like the charters at issue in *Deveaux* and *Banker's Trust*,[4] makes no reference to the jurisdiction of specific courts, either state or federal. Rather, it confers on the Red Cross the power "to sue or be sued in courts of law and equity, State or Federal, within the jurisdiction of the United States." This language cannot be deemed to have expanded the jurisdiction of *state* courts over the Red Cross—the Red Cross has no power to "sue or be sued" in a state court, absent some independent basis for the court's jurisdiction. And, unlike the *Osborn* charter, § 2 treats state and federal courts in a parallel fashion. No clear basis exists for interpreting § 2 as having expanded the jurisdiction of federal courts over the Red Cross while merely having conferred on the organization the power to sue in state courts, assuming that some independent jurisdictional ground exists in state court. This is particularly true given the availability of general federal question jurisdiction, an independent basis for original federal jurisdiction which did not exist at the time of *Osborn*.

The Red Cross argues that the more recent case of *D'Oench, Duhme & Co. v. Federal Deposit Insurance Corp.,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), stands for the proposition that a charter empowering a corporation to "sue and be sued in state or federal court" establishes original federal jurisdiction over cases involving the corporation. However, in *D'Oench* the Supreme Court did not interpret the meaning of the "sue and be sued" clause. Rather, the Court addressed the question of whether, in a nondiversity case, a federal court should apply state law or federal common law in the absence of a governing federal statute, noting only incidentally that jurisdiction was premised on the "sue and be sued" clause. 315 U.S. at 455, 62 S.Ct. at 678. Neither the parties nor the Court directly raised the validity of subject matter jurisdiction under the F.D.

---

**4.** The bank's charter in *Deveaux* empowered the bank "to sue and be sued ... in courts of record, or any other place whatsoever." In *Banker's Trust,* the railroad could "sue and be sued in all courts of law and equity within the United States."

I.C. charter. Even more to the point, the F.D.I.C. charter in *D'Oench*—unlike the Red Cross charter—expressly provides that "all suits of a civil nature at common law or equity to which the Corporation shall be a party *shall be deemed to arise under* the law of the United States."[5]  12 U.S.C. § 264(j) (emphasis supplied).

### B. *Legislative History of the Amendment*

Our reading of the "sue and be sued" clause in the Red Cross charter as conferring only the power to sue is supported by the structure of the charter itself and the legislative history of the amendment. Sections one through thirteen of title 36 concern the creation and operating procedures of the Red Cross. Within the framework of the statute, section 2, entitled "Name of corporation; powers," denominates standard corporate powers. For example, the section names the Red Cross and provides for perpetual succession; it confers the right to use a seal and emblem, the power to establish bylaws, and the right to own property. The interpretation of the "sue and be sued" clause as limited to the power of the Red Cross to litigate is consistent with the apparent purpose and context of the clause.

The legislative history of the amendment is relatively sparse and evinces no clear intent on the part of Congress to confer original jurisdiction. When Congress amended the Red Cross charter in 1947, it adopted many of the recommendations of the recently formed Red Cross Advisory Committee. The committee, known as the Harriman Committee, was formed to recommend changes in the Red Cross charter to make the governing board more representative and to ensure the most effective handling of its programs. *The American National Red Cross Report of The Advisory Committee on Organization*, at 3, 15 (June 11, 1946) (hereinafter *Report*). In the last section of its report, entitled "Miscellaneous Recommendations," the committee recommended that the charter clarify the status of the Red Cross as a litigant in federal court:

> *Recommendation No. 22. The Charter should make it clear that the Red Cross can sue and be sued in the Federal Courts.* The present Charter gives the Red Cross the power to "sue and be sued in courts of law and equity within the jurisdiction of the United States." The Red Cross has in several instances sued in the Federal Courts, and its powers in this respect have not been questioned. However, in view of the limited nature of the jurisdiction of the Federal Courts it seems desirable that this right be clearly stated in the Charter.

*Report* at 35–36.

This recommendation led Congress to amend the charter by inserting the phrase "State or Federal" following the existing language "sue and be sued in courts of law and equity" in the Red Cross charter. Even assuming that Congress acted in direct response to the committee's recommendation, the insertion of this language is insufficient to support the expansive view of federal jurisdiction urged by the Red Cross in this case. The Harriman Committee report itself does not clearly indicate that the proposed amendment was aimed at conferring federal subject matter jurisdiction as opposed to clarifying capacity to litigate in the federal courts when jurisdic-

---

**5.** The language and legislative history of the F.D.I.C. charter actually support the narrower, nonjurisdictional reading of the Red Cross charter. The original F.D.I.C. enabling legislation of June 16, 1933 provided, in language virtually identical to the Red Cross charter, that the F.D.I.C. would have the power "to sue and be sued, complain and defend, in any court of law or equity, State or Federal." Banking Act of 1933, ch. 89, § 8, 48 Stat. 168 (June 16, 1933). On August 23, 1935, the provision was amended to include the language "shall be deemed to arise under the laws of the United States." Banking Act of 1935, ch. 614, § 101, 49 Stat. 684. The Report of the Senate Committee on Banking and Currency makes clear that the purpose of this amendment was to confer original federal jurisdiction in F.D.I.C. cases. *See* S.Rep. No. 1007, 74th Cong., 1st Sess. 5. No comparable language can be found in the Red Cross charter.

It is also interesting to note that *D'Oench* is the only case in the 166 years since *Osborn* that the Supreme Court has even arguably held that a "sue and be sued" clause creates federal jurisdiction.

tion otherwise existed. Explaining the recommendation, the report initially refers simply to the Red Cross's *power* to sue in federal court. Although the report subsequently refers to the jurisdiction of federal courts and the "right" of the Red Cross in this regard, the language of the recommendation itself makes no such reference to jurisdiction. The goal of the recommendation seems to have been to confirm the Red Cross's capacity to litigate in federal court; indeed, the report expressly noted that the organization had done so in the past based on ordinary jurisdictional grounds. *Id.; see, e.g., Lovskog v. American National Red Cross,* 111 F.2d 88 (9th Cir.1940); *American Red Cross v. Raven Honey Dew Mills,* 74 F.2d 160 (8th Cir.1934). As the Committee recommended, the revised charter does make clear that the Red Cross "*can* sue and be sued in federal court." However, the language of the amendment does not purport to expand the jurisdiction of federal courts to include all cases involving the Red Cross. Moreover, the Senate Report makes no mention of the jurisdictional point whatsoever. S.Rep. No. 38, 80th Cong., 1st Sess., *reprinted in* 1947 *U.S.Code Cong.Serv.* 1028.

Had Congress intended to expand jurisdiction, it could easily have adopted the clear and specific language used to create federal jurisdiction common in other charters amended at approximately the same time. For example, eleven weeks after amending the Red Cross charter, the same Congress passed legislation amending the charter of the Federal Crop Insurance Corporation. The F.C.I.C.'s amended charter provided that it "may sue and be sued in its corporate name in any court of record of a State having general jurisdiction, or in any United States district court, *and jurisdiction is hereby conferred upon such district court to determine controversies without regard to the amount in controversy.*" Act of August 1, 1947, ch. 440, § 7, 61 Stat. 719 (current version at 7 U.S.C. § 1506) (emphasis supplied). Congress so amended the F.C.I.C. charter despite the presence of the language "sue and be sued in any court, state or federal" in the corporation's original charter.

Similarly, in creating the Commodity Credit Corporation in 1948, Congress provided that "the district courts of the United States ... shall have exclusive original jurisdiction, without regard to the amount in controversy, of all suits brought by or against the Corporation." Act of June 29, 1948, ch. 704, § 4, 62 Stat. 1070; *see also* note 4, *supra,* (noting the inclusion of "deemed to arise under" language in the F.D.I.C. charter amended in 1935.) Thus, at the very time it amended the Red Cross charter, Congress could be quite specific in expressing grants of federal jurisdiction. In such circumstances, we are unable to interpret the 1947 amendment confirming the Red Cross's capacity to litigate as intended simultaneously to expand the subject matter jurisdiction of federal courts to encompass all suits by and against that organization.

Finally, we note that *Patterson v. American National Red Cross,* 101 F.Supp. 655 (M.D.Fla.1951), a case decided just four years after the charter amendment, suggests that even the Red Cross itself did not view the 1947 amendment as having created a new basis for federal jurisdiction. In that case, the Red Cross opposed the plaintiff's motion to remand a case that the Red Cross had removed to federal court based on diversity jurisdiction. The *Patterson* court cited the 1947 amendment merely as proof that Congress envisioned the prospect of federal litigation in which the Red Cross was a party. The Red Cross did not even suggest that the amendment conferred federal jurisdiction but viewed it, as did the court, merely as confirming the right of the organization to invoke diversity jurisdiction.

This is not to say that the question whether Congress intended to convert all Red Cross cases into federal question cases when it amended the Red Cross charter is easily decided. As a matter of practical sense, it is easy to imagine that Congress would have conferred federal subject matter jurisdiction in cases by and against the Red Cross had the issue been presented. The division among the district courts and our sister circuit's conclusion differing

from the one we reach today tempt us to reach out for a reading of the statute which, while unsupported in the text and legislative history, may seem more in tune with the times.[6] But we are not legislators. Our responsibility as a court is to interpret the law as written. If the statute was ineptly drafted—as may have been the case—or if modern demands now require conferring federal jurisdiction over Red Cross cases, the Congress has plenary power to act. We hold simply that neither the express language nor the history of the 1947 amendment of § 2 establishes that Congress intended to grant the Red Cross access to federal courts for the disposition of cases governed by state law absent some independent basis for federal jurisdiction.

*Reversed and remanded. Costs to appellant.*

---

**6.** We note, however, that a grant of original federal jurisdiction over cases involving the Red Cross would not lead to increased uniformity in the determination of that organization's liability in the HIV cases. The tort law of the forum state would provide the rule of decision for the case, whether it is brought in state or federal court. *See* 28 U.S.C. § 1652 ("The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply."); *see also,* Friendly, "In Praise of Erie—And of the New Federal Common Law," 39 *N.Y.U.L.Rev.* 383, 421–22 (1964) (noting that "*Erie* applies, whatever the basis of jurisdiction, to any issue in the case which is governed by state law operating of its own force").